Argued and submitted March 4, decision of Court of Appeals and judgment of
circuit court affirmed June 19, 2008

Robert J. BOYER,
*Petitioner on Review,*

*v.*

SALOMON SMITH BARNEY,
a Delaware corporation,
Dean Michael Howell, and Dean K. Morrell,
*Respondents on Review.*

(CC 0212-12721; CA A123799; SC S055192)

188 P3d 233

George W. Kelly, Eugene, argued the cause and filed the brief for petitioner on review.

Bruce L. Campbell, of Miller Nash LLP, Portland, argued the cause and filed the brief for respondents on review. With him on the brief was Thomas C. Sand.

Erin C. Lagesen, Assistant Attorney General, Salem, filed a brief for *amicus curiae* State of Oregon. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Robert S. Banks, Jr., Portland, filed a brief for *amicus curiae* Public Investors Arbitration Bar Association.

N. Robert Stoll, Gary M. Berne, and Timothy S. DeJong, of Stoll Stoll Berne Lokting & Shlachter P.C., Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

Thomas M. Christ, of Cosgrave Vergeer Kester LLP, Portland, filed a brief for *amicus curiae* Oregon Association of Defense Counsel.

GILLETTE, J.

## GILLETTE, J.

Plaintiff Robert J. Boyer sued defendants Salomon Smith Barney (Smith Barney), Dean Michael Howell, and Dean K. Morrell for negligence and breach of contract, asserting that defendants' handling of certain commodities trades caused plaintiff to suffer significant financial losses. The trial court granted defendants' motion for judgment on the pleadings as to the negligence claim. The breach of contract claim went to trial, where the jury returned a verdict for defendants. Plaintiff appealed, assigning as error only the trial court's ruling granting judgment on the pleadings as to the negligence claim. The Court of Appeals affirmed by an equally divided court. *Boyer v. Salomon Smith Barney*, 213 Or App 560, 162 P3d 1016 (2007). We allowed plaintiff's petition for review, and now affirm the decision of the Court of Appeals and the judgment of the trial court.

Judgment on the pleadings, which is authorized by ORCP 21 B,[1] "is only allowable when the pleadings[,] taken together[,] affirmatively show that plaintiff has no cause of action against the defendant[.]" *Salem Sand v. City of Salem*, 260 Or 630, 636, 492 P2d 271 (1971). In ruling on the motion, the trial court cannot rule on issues of fact. *Id.* On review of a judgment on the pleadings, an appellate court accepts as true all well-pleaded allegations of the complaint. *Slogowski v. Lyness*, 324 Or 436, 439, 927 P2d 587 (1996). We therefore turn to the allegations of plaintiff's third amended complaint.[2]

Plaintiff alleges that Smith Barney "holds itself out to be a full service financial services firm, offering trained Financial Consultants who will help earn money for their customers." Plaintiff alleges that, based on those representations, he opened an investment account with Smith Barney and entered into an account agreement. "[D]efendant Howell

---

[1] ORCP 21 B provides:

"After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings."

[2] Plaintiff's contract claim was tried under the allegations of his third amended complaint, and his negligence case was disposed of under the pleadings in that same complaint.

was [plaintiff's] Financial Consultant acting as his agent to provide him with financial consultation and services[,] including executing his commodities transactions." Plaintiff further alleges that defendants gained plaintiff's trust and confidence by providing him with accurate and timely information, and that defendant Howell called plaintiff several times a day to give plaintiff research information, information about the commodities markets, and information about plaintiff's investments, together with investment recommendations.

Plaintiff alleges that his investment account was subject to trading limits or margin limits. Although plaintiff began getting margin calls from Smith Barney, defendants continued to give plaintiff margin credit and regularly allowed plaintiff to trade beyond margin limits, as long as plaintiff paid his margin calls.

On December 13, 2000, plaintiff received a margin call for $6,422. That same day, he delivered $7,422 to Smith Barney. Defendants, however, allegedly failed to properly account for the $7,422 payment, and defendants Howell and/or Morrell mistakenly believed that plaintiff had not made the payment.

The next day, December 14, 2000, plaintiff placed two orders with defendants—one for crude oil contracts, and another for natural gas contracts. Defendants accepted both orders. Plaintiff's order for crude oil contracts was filled that same morning; however, defendant Howell canceled the order for natural gas contracts before it was filled, without plaintiff's authorization or consent. Plaintiff alleges that, if the order for natural gas contracts had been filled, it would have made money for him and helped reduce his margin debt.

One day later, on December 15, defendants liquidated plaintiff's crude oil contracts by forced sale. Plaintiff alleges that the sale caused him immediate losses of $12,200, which then resulted in additional forced sales from his investment account.

Plaintiff alleges that defendants knew or should have known that accepting the December 14 orders would place plaintiff above his margin limits, that they would not

fill both orders, that they would force plaintiff to liquidate the order that they did fill within one day, and that such forced liquidations create extraordinary risk for the investor. Plaintiff further alleges that defendants also knew or should have known how important it was for plaintiff to have timely and accurate information in order to make informed decisions about his investments. Nevertheless, he asserts, defendants accepted both of the December 14 orders without telling plaintiff that they would fill only one of them, and without telling plaintiff that the one that they filled would be subject to a forced sale the following day. Plaintiff alleges that, had he been told that defendants would fill only one of the orders, he would have chosen the natural gas order, which would have been profitable and kept plaintiff within his margin trading limits.

■     In his claim for negligence, plaintiff alleges that defendants breached duties owed to him:

"a.   By failing to timely inform [plaintiff] as to what defendants were going to do with his December 14, 2000[,] orders;

"b.   By failing to disclose to [plaintiff] that Smith Barney was going to force him to trade the * * * Crude Oil contracts within a day of his purchase on December 14, 2000;

"c.   By failing to tell [plaintiff] in a timely manner that Smith Barney would only fill one of his December 14, 2000[,] commodities orders but not both;

"d.   By failing to timely disclose to [plaintiff] on December 14, 2000[,] that Smith Barney canceled his order for * * * Natural Gas Contracts;

"e.   By failing to timely inform [plaintiff] that Smith Barney was going to cancel his December 14, 2000[,] Natural Gas contracts order[;]

"f.   By failing to properly account for the $7,422 margin call payment [plaintiff] made on December 13, 2000;

"g.   By accepting [plaintiff's] December 14, 2000[,] orders;

"h.   By placing [plaintiff's] Crude Oil order on December 14, 2000[,] without informing him that he would be forced to sell his positions within a day."

Defendant's answer to the third amended complaint incorporated the commodity client agreement between Smith Barney and plaintiff.[3] The commodity client agreement includes two provisions that are relevant here:

"6.   I understand you act as agent and not as principal for your clients' commodity futures and commodity options transactions which are effected on exchanges. * * *

"* * * * *

"9.   In the event I fail to deposit sufficient funds to pay for any coins, commodities, contracts for the future delivery thereof, commodity options, or forward commodity and foreign exchange contracts and/or satisfy any demands for original and/or variation margin, or whenever in your discretion you consider it necessary, you may without prior demand or notice, when and if you deem appropriate based upon your own business judgment notwithstanding any rule of any exchange, liquidate the positions in my account, hedge and/or offset those positions in the cash market or otherwise, sell any property belong[ing] to me or in which I have an interest, cancel any open orders for the purchase and sale of any property, or borrow or buy any property required to make delivery against any sales, including a short sale, effected for me, all at my sole risk. * * *"

Defendants moved for judgment on the pleadings as to (among other things) plaintiff's negligence claim. Relying on a line of cases beginning with this court's decision in *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 831 P2d 7 (1992), defendants argued that the extent of any duty of care that they owed to plaintiff was that prescribed by the contract with plaintiff (the commodity client agreement). Hence, they argued, any liability to plaintiff was in contract,

---

[3] Ordinarily, of course, the content of the contract would not be before us on a motion for judgment on the pleadings. But, as noted, defendants incorporated the commodity client agreement into their answer, and plaintiff did not object to the trial court (or the Court of Appeals, or this court) considering the terms of that agreement in evaluating the merits of defendant's motion for judgment on the pleadings. In this procedural posture, we treat the terms of the commodity client agreement as having been admitted by plaintiff, the same as if plaintiff had alleged those terms in his complaint.

not in tort. They disputed plaintiff's contention that plaintiff had a special or confidential relationship with defendants, arising out of but different and more extensive than the contract, that would permit an action for negligence.

The trial court agreed with defendants and granted judgment on the pleadings as to the negligence claim. As noted, plaintiff's claim for breach of contract proceeded to trial, where the jury returned a verdict for defendants.

Plaintiff appealed to the Court of Appeals, challenging only the judgment on the pleadings as to the negligence claim. After the appeal was heard by a three-judge panel, the Court of Appeals resubmitted the case en banc and affirmed the judgment of the trial court by an equally divided court. Both the concurring opinion and the dissenting opinion in the Court of Appeals agreed that the relevant legal question was whether plaintiff and defendants had a "special relationship" that would support an action in tort, or whether plaintiff was limited to contract remedies. *Boyer*, 213 Or App at 564-65 (concurring opinion); *id.* at 573 (dissenting opinion). But the concurrence and dissent disagreed—as do the parties—about whether such a special relationship could be shown here and, if it could, whether defendants could be liable in negligence under it. We do not further spell out the competing views in the Court of Appeals, because such an exercise seems unnecessary. Instead, we state our own view: (1) The relationship between plaintiff and Smith Barney was that of principal and agent; (2) such a relationship can—and often will—be a "special" one; but (3) the particular provisions of the contract between the parties in this case prevented the parties' relationship from being a "special" one that would permit imposition of tort liability on the allegations of the third amended complaint.

■     This court has produced a number of decisions involving the concept of a "special relationship" between contracting parties that could give rise to negligence claims. In doing so, the court has attempted to establish boundaries between those cases that must be brought in contract and those cases that (because of the existence of a "special relationship") may be brought in tort. The first major effort of this court to address that problem was *Georgetown Realty*, 313 Or 97. The issue in that case was whether a liability insurer

could be liable in tort for its negligence in defending its insured against a third-party lawsuit. This court first noted that, since 1900, parties to certain types of contracts—contracts with "physicians, lawyers, real estate brokers, architects, engineers, and landlords"—had been permitted to sue in tort. *Id.* at 103. After an extensive review of the holdings of those cases, *id.* at 102-06, this court concluded that an action in negligence was permitted only when the law imposed a standard of care beyond the contract terms:

> "When the relationship involved is between contracting parties, and the gravamen of the complaint is that one party caused damage to the other by negligently performing its obligations under the contract, then, and even though the relationship between the parties arises out of the contract, the injured party may bring a claim for negligence if the other party is subject to a standard of care independent of the terms of the contract. If the plaintiff's claim is based solely on a breach of a provision in the contract, which itself spells out the party's obligation, then the remedy normally will be only in contract, with contract measures of damages and contract statutes of limitation. That is so whether the breach of contract was negligent, intentional, or otherwise. In some situations, a party may be able to rely on either a contract theory or a tort theory or both."

*Id.* at 106 (citation omitted). This court concluded that liability insurers were subject to "a standard of care that exists independent of the contract and without reference to the specific terms of the contract," *id.* at 110-11, because the insured relinquishes control of the defense—and, derivatively, of the insured's liability—to the liability insurer. *Id.* at 110.

The present case is one in which a principal is suing his agent for negligence, alleging a "special relationship." As such, the case does not involve a novel claim. Instead, it falls into one of the already recognized categories—principal-agent—that may give rise to liability for negligence. Plaintiff's third amended complaint specifically alleged the defendant's agency; the commodity client agreement specifically recognized that agency; defendant does not now dispute it. The law of agency imposes duties on the agent; those duties "exist[ ] independent of the contract and without reference to the specific terms of the contract." *Georgetown Realty*, 313 Or

at 111. This court has expressly recognized that the principal-agent relationship is one type of special relationship under *Georgetown Realty* and that the agent therefore may be liable in negligence for breach of the agent's duties. *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 616-18, 892 P2d 683 (1995). *See also Berki v. Reynolds Securities, Inc.*, 277 Or 335, 342, 560 P2d 282 (1977) ("A broker's duty is complete and his authority ceases when a purchase or sale in accordance with the agreement is made and he has fully accounted" (citation omitted)); *Williams v. Pilgrim Turkey Packers, Inc.*, 264 Or 36, 43-44, 503 P2d 710 (1972) (noting that agent has fiduciary duty as to matters within the scope of agency, but not necessarily as to matters in which agent is not employed). We must consider, then, whether the specific breaches of duty asserted by plaintiff in the third amended complaint are within the scope of the relationship shown here.[4]

■     In this case, plaintiff offered eight specific allegations of negligence. Of those eight allegations, six asserted, in one way or another, that defendant had failed to provide plaintiff with timely information.[5] As to those allegations, the issue is

---

[4] Defendants argue that, under *Berki*, a stockbroker has no fiduciary duty unless the stockbroker exercises some discretion in controlling the investments in the investor's account. The stockbroker in *Berki* had no such discretion, 277 Or at 341, and this court stated: "The agreement was at best an agreement by the broker to buy and sell at the direction of the plaintiff. A stockbroker acting as here is not a fiduciary." *Id*. at 342. We think, however, that the foregoing quotation serves only to explain that *that* agent in *that* case was not liable in tort to *that* principal. It in no way suggested that an agent *could not* be so liable in negligence to a principal.

[5] Again, those six allegations are:

"a. By *failing to timely inform* [plaintiff] as to what defendants were going to do with his December 14, 2000[,] orders;

"b. By *failing to disclose* to [plaintiff] that Smith Barney was going to force him to trade the * * * Crude Oil contracts within a day of his purchase on December 14, 2000;

"c. By *failing to tell* [plaintiff] in a timely manner that Smith Barney would only fill one of his December 14, 2000[,] commodities orders but not both;

"d. By *failing to timely disclose* to [plaintiff] on December 14, 2000[,] that Smith Barney canceled his order for * * * Natural Gas Contracts;

"e. By *failing to timely inform* [plaintiff] that Smith Barney was going to cancel his December 14, 2000[,] Natural Gas contracts order[;]

"* * * * *

"h. By placing [plaintiff's] Crude Oil order on December 14, 2000[,] *without informing him* that he would be forced to sell his positions within a day."

(Emphases added.)

whether an agent has a duty under an agreement such as the one between the present parties, to provide to a principal information of the kinds described.

■  It is a general principle of agency law that an agent does have a duty to provide the principal with information relevant to the matters entrusted to the agent. This court expressly recognized as much in *Lindland v. United Business Investments*, 298 Or 318, 693 P2d 20 (1984), where this court quoted, with approval, the following from the *Restatement (Second) of Agency* § 381 (1958):

> " 'Unless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person.' "

298 Or at 325. That specific duty to provide information arises from the agent's general duty to exercise care on behalf of the principal. *See Lindland*, 298 Or at 324 (citing case). "The extent of the duty [to provide information] depends upon the kind of work entrusted to him [the agent], his previous relations with the principal, and all the facts of the situation." *Restatement* at § 381 comment a.

That duty to provide information, however, is not absolute; it applies only "[u]nless otherwise agreed." *Restatement* at § 381. That qualification to the *Restatement* rule means that we must consider paragraph 9 of the commodity client agreement, which, as noted, states:

> "In the event I fail to deposit sufficient funds to pay for any coins, commodities, contracts for the future delivery thereof, commodity options, or forward commodity and foreign exchange contracts and/or satisfy any demands for original and/or variation margin, or *whenever in your discretion you consider it necessary, you may without prior demand or notice, when and if you deem appropriate based upon your own business judgment* notwithstanding any rule of any exchange, *liquidate the positions in my account,* hedge and/or offset those positions in the cash market or otherwise, *sell any property* belong[ing] to me or in which I have an interest, *cancel any open orders* for the purchase and sale of any property, or borrow or buy any property

required to make delivery against any sales, including a short sale, effected for me, *all at my sole risk.* * * *"

(Emphases added.)

The issue is whether paragraph 9 establishes that plaintiff and defendants had "otherwise agreed" that defendants were not "subject to a duty to use reasonable efforts to give [plaintiff] information which [was] relevant to affairs entrusted to [defendants]." *Restatement* at § 381. We conclude that there was such an agreement. Paragraph 9 says that defendants "may" act without notice, "when and if you deem appropriate *based upon your own business judgment.*" (Emphasis added.) Read as a whole, paragraph 9 allows defendants to act to protect *their* interests; plaintiff's interests clearly are subordinate. That is, paragraph 9 lets defendants protect their interests, without giving plaintiff the kind of notice that he asserts would have been necessary to protect his own interests.[6]

■      Our disposition of plaintiff's six "notice" allegations leaves two other allegations to be addressed. Plaintiff alleged in allegation f. that defendants had "fail[ed] to properly account for the $7,442 margin call payment [plaintiff] made on December 13, 2000." But plaintiff offers no explanation of how that obligation or its breach is tortious, as opposed to arising from and constituting a breach of contract. Plaintiff was therefore not entitled to pursue a tort claim under allegation f.

■      Finally, in allegation g., plaintiff asserted that defendants harmed him "[b]y accepting [his] December 14, 2000[,] orders." But plaintiff points to no duty on *defendants'* part— either in contract or in tort—to *refuse* to accept plaintiff's order, and we know of none. Moreover, plaintiff has not alleged any facts that show, either directly or by inference,

---

[6] Plaintiff does specify in paragraph 33 of his third amended complaint that "nobody informed [plaintiff] that Smith Barney had canceled his Natural Gas order until almost five hours after [plaintiff] placed this order." This allegation possibly could be construed as a claim that, paragraph 9 of the commodity client agreement notwithstanding, Smith Barney at least had a duty to inform plaintiff that his order had not been acted upon. But none of plaintiff's allegations respecting damages is attributable to that narrow, five-hour period.

how the act of acceptance, *qua* acceptance, caused him damage. (Any connected allegation concerning defendants' failure to *tell* plaintiff about the defendants' choice has been addressed elsewhere.) Thus, plaintiff was not entitled to pursue his tort claim under allegation g.[7]

In reaching our conclusions today, we note that plaintiff does not rely on any outside source of law—such as statutes, regulations, or the rules of various licensing agencies and commodity exchanges—in any respect. That is important, because industry standards, statutes, or regulations could, in a particular case, provide a basis in law for liability on defendants' part that cannot be made out from plaintiff's relatively narrow allegations in this case.

Based on the foregoing, we conclude that the trial court properly granted judgment on the pleadings against plaintiff on plaintiff's negligence claim. The pleadings "show that plaintiff has no cause of action against the defendant[.]" *Salem Sand*, 260 Or at 636.[8]

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[7] Although plaintiff alleges elsewhere (but not as a specification of negligence) that, in choosing to fill one order but not another, Smith Barney chose to fill the order that profited it the most, plaintiff does not allege that, in doing so, Smith Barney breached some duty to him (whether denominated a duty of "loyalty" or otherwise).

[8] Our disposition of this case is not a holding that other plaintiffs could not recover from other defendants under facts slightly different than those alleged here. Moreover, and in view of our disposition of this case on the ground stated, we are not obliged to consider whether and to what extent plaintiff's failure to prove his contract claims to a jury might also limit or eliminate his ability to recover in tort, based on theories of issue preclusion.