Argued and submitted May 2, 2014, reversed and remanded April 15, 2015

Kurtiss TEEGARDEN,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
acting by and through
Oregon Youth Authority;
and Sid Thompson,
*Defendants-Respondents.*

Marion County Circuit Court
11C20059; A152071

348 P3d 273

Kevin T. Lafky argued the cause for appellant. With him on the briefs were Tonyia J. Brady and Lafky & Lafky.

Inge D. Wells, Assistant Attorney-in-Charge, argued the cause for respondents. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Plaintiff, who is a former employee of the State of Oregon—specifically, Oregon Youth Authority—filed a complaint seeking damages from the state and Sid Thompson, the superintendent of MacLaren Youth Correctional Facility where plaintiff had worked (collectively, OYA).[1] After OYA moved for judgment on the pleadings pursuant to ORCP 21 B, the trial court concluded that plaintiff had resolved "all civil areas of dispute" by way of a settlement agreement. Accordingly, the court entered a judgment dismissing all of plaintiff's claims with prejudice. Plaintiff appeals the trial court's judgment and, as explained below, we reverse and remand.

We state the facts as alleged in the complaint and supplemented by the terms of the settlement agreement, which was attached to OYA's answer. *See Boyer v. Salomon Smith Barney*, 344 Or 583, 589 n 3, 188 P3d 233 (2008) (where the defendants incorporated a contract into their answer and plaintiff did not object to the trial court considering the terms of that agreement in evaluating a motion for judgment on the pleadings, the appellate court treated the terms of the agreement "as having been admitted by plaintiff, the same as if plaintiff had alleged those terms in his complaint").

Plaintiff worked for OYA as a group life coordinator at MacLaren. In that position, plaintiff's main job duty was to supervise youth offenders in the facility. Over the course of several months in 2010, plaintiff made a number of complaints to management about staff being attacked by youth offenders, knowledge of offenders planning attacks on staff, differential treatment of offenders, staff being put physically at risk, lack of policies and rules governing the unit, and failure to provide treatment to offenders. On May 19, 2010, OYA terminated plaintiff from his position.

After plaintiff was dismissed, he pursued a grievance through his union. As part of the settlement of the

---

[1] Because Thompson was sued as "the superintendent of OYA MacLaren during all relevant times *** [who was] acting within the course and scope of his employment and under color of law," we refer to him throughout this opinion, along with the Oregon Youth Authority, as OYA.

grievance, OYA agreed that plaintiff's dismissal would be characterized as a resignation and that plaintiff would not have any further legal issues regarding the events leading to his termination. In return, plaintiff agreed to drop his claims and release OYA from liability. Accordingly, the parties signed a settlement agreement.

The agreement, entered into in August 2010, recites that the parties "wish to resolve this grievance on mutually satisfactory terms without further hearing or litigation of any kind." Accordingly, OYA "agrees to revoke the Letter of Dismissal and accepts a Letter of Resignation * * * from [plaintiff], effective upon final signature of this document." Plaintiff, for his part, "agrees not to appeal, grieve, or otherwise challenge the * * * Letter of Dismissal," and the union "voluntarily withdraws the * * * grievance with prejudice." The agreement contains a provision stating that it "is the sole and entire agreement between the parties. This Agreement fully supersedes any and all written or oral contracts, agreements or understandings between the parties pertaining to the subjects discussed herein." Furthermore,

> "[t]his Agreement constitutes the good faith resolution of all claims or potential claims [plaintiff] might have against the State or OYA and is not and shall not in any way be construed as an admission of any wrongful or discriminatory act or omission against [plaintiff], or that [plaintiff]'s discipline was in any way wrongful, unlawful, or contrary to the terms of the parties' collective bargaining agreement."

Soon after the parties entered into the settlement agreement, plaintiff was charged with official misconduct, tampering with a witness, and fourth-degree assault based on events related to his termination. Around the same time, he obtained employment at the Oregon Department of Fish and Wildlife (ODFW). Once ODFW conducted a further background check, however, it terminated plaintiff's employment as a result of the pending criminal charges against him.

Although OYA was aware that those criminal charges would likely be brought against plaintiff, it did not disclose that information to plaintiff during settlement negotiations. Plaintiff would not have entered into the settlement

if that information had been provided. OYA encouraged the prosecution, provided prosecutors and investigators access to OYA employees, and provided paid time off to employees who testified against plaintiff. After a jury trial, plaintiff was acquitted of all the criminal charges against him.

In August 2011, plaintiff filed his complaint against OYA in which he sought damages for malicious prosecution, intentional infliction of emotional distress, intentional interference with a prospective economic relationship, and violations of 42 USC section 1983, along with a declaration, "pursuant to ORS 28.010-28.020," that "the release is invalid, and of no legal effect[.]" OYA filed an answer to the complaint and set forth a number of affirmative defenses; among other things, OYA asserted that plaintiff's claims were barred as a result of the settlement agreement. In his reply, plaintiff denied OYA's affirmative defenses. Thereafter, OYA filed a motion for judgment on the pleadings pursuant to ORCP 21 B on the ground that plaintiff's claims were barred "because he released all claims upon entering into a binding settlement agreement with [OYA]."[2] Plaintiff responded that the settlement agreement had been breached by OYA or, alternatively, that execution of the agreement was based on a misrepresentation and, therefore, could not be enforced. He also contended that, by its terms, the agreement only settled his union grievance and did not apply to the claims at issue, and pointed out to the trial court that issues of fact cannot be tried on a motion for judgment on the pleadings.

The trial court held a hearing on the motion and later issued a letter opinion concluding that "the Settlement Agreement resolves all civil areas of dispute between OYA and the Plaintiff." Furthermore, the court observed that "the District Attorney was not a party to the Settlement Agreement" and "Plaintiff could not reasonably anticipate the Settlement Agreement prohibited the District Attorney from filing criminal charges against him."

Plaintiff objected, asserting that his claims for malicious prosecution and intentional interference with a prospective economic relationship related to "conduct and

_____

[2] Under ORCP 21 B, "[a]fter the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings."

facts that occurred after the execution of the settlement agreement" and that the agreement did not "release future claims when the facts that g[a]ve rise to the claims had not yet occurred." Furthermore, plaintiff contended that the court could not dismiss his claim for declaratory relief:

"Plaintiff objects to having his sixth claim for declaratory judgment against OYA dismissed because the court has not ruled on the declaratory judgment nor has Plaintiff been able to provide evidence at hearing. Pursuant to statute and case law, if jurisdiction to render declaratory judgment is properly invoked, the court has a duty to render judgment declaring right of the respective parties litigant."

The court held an additional hearing, but thereafter entered an order granting the motion for judgment on the pleadings and ordering that all of plaintiff's claims be dismissed with prejudice. Thus, the court concluded (1) that the settlement agreement was enforceable as a matter of law despite plaintiff's assertions that it had been induced by misrepresentation and (2) as a matter of law, the release contained in the settlement agreement precluded all of plaintiff's claims. Accordingly, the court entered judgment in favor of OYA and against plaintiff, dismissing with prejudice every claim set forth in plaintiff's complaint.

On appeal, plaintiff contends that the trial court erred in granting the motion for judgment on the pleadings. He asserts, in part, that the motion on the pleadings should not have been granted because (1) his pleadings alleged that the settlement agreement is unenforceable as he was induced to execute the agreement by OYA's misrepresentations, (2) the settlement agreement did not release liability for future torts, and (3) the trial court could not dismiss his declaratory judgment claim. We agree with plaintiff on all of those points.

"Motions for judgment on the pleadings are not generally well-regarded by the courts, because hasty or imprudent use of the procedure can conflict with the policy of ensuring litigants a full and fair opportunity to try their claim or defense." *Thompson v. Telephone & Data Systems, Inc.*, 130 Or App 302, 309, 881 P2d 819, *adh'd to as modified on recons*, 132 Or App 103, 888 P2d 16 (1994). Thus, "[a]

showing that the nonmoving party cannot prevail as a matter of law is the basis for a motion for judgment on the pleadings." *Rowlett v. Fagan*, 262 Or App 667, 679, 327 P3d 1, *rev allowed*, 356 Or 516 (2014) (internal quotation marks omitted). "Judgment on the pleadings, which is authorized by ORCP 21 B, 'is only allowable when the pleadings[,] taken together[,] affirmatively show that plaintiff has no cause of action against the defendant[.]'" *Boyer*, 344 Or at 586 (quoting *Salem Sand v. City of Salem*, 260 Or 630, 636, 492 P2d 271 (1971)) (footnote omitted; brackets in *Boyer*). "On review of a judgment on the pleadings, an appellate court accepts as true all well-pleaded allegations of the complaint." *Id*. To "obtain judgment on the pleadings, defendants ha[ve] the burden to establish that, assuming the truth of the allegations in the complaint, they were[,]" nonetheless, entitled to prevail. *Rowlett*, 262 Or App at 680 (emphasis omitted).

We begin by addressing plaintiff's contention that the court erred in dismissing his claims on the pleadings based on the settlement agreement because the agreement was procured by misrepresentation and was, therefore, unenforceable. "Releases are a species of settlement agreement and, as such, are favored by the law." *Pioneer Resources, LLC v. D. R. Johnson Lumber Co.*, 187 Or App 341, 356, 68 P3d 233, *rev den*, 336 Or 16 (2003). "Nevertheless, under limited circumstances, enforcement of a release may be barred if the release was the product of misrepresentation or unconscionable conduct." *Id.*; *see also Whitehead v. Montgomery Ward & Co., Inc.*, 194 Or 106, 131, 239 P2d 226 (1952) (if a plaintiff was induced to enter into a release "by means of [the] defendant's fraud or material misrepresentation, the transaction is voidable"). However, "fraud or inequitable conduct with respect to a transaction that is the subject of a release does not bar enforcement of a release, so long as the release was not itself the product of fraud in the inducement." *Pioneer Resources, LLC*, 187 Or App at 358.

Here, in his complaint, plaintiff alleged that, as part of settlement discussions, OYA represented to him that he "would not have any further legal issues regarding the events leading to his termination." However, "[w]ithin days of signing the release" agreement, he was charged with crimes relating to the events leading to his termination.

Furthermore, at the time of the settlement discussions, "OYA was aware of the likelihood that Plaintiff would be charged with crimes relating to the events related to his termination, but failed to disclose that material fact to Plaintiff when Plaintiff was considering whether to settle his grievance." OYA also "actively participated in the criminal prosecution of Plaintiff." That participation included "encouraging the prosecution." According to plaintiff, if OYA had disclosed those facts during settlement discussions, he "would not have signed the release and dropped his grievance." Thus, plaintiff claims that the release itself was procured by fraud.[3]

OYA asserts that, assuming it failed to inform plaintiff of the likelihood that criminal charges would be filed against him, that is not a basis on which the agreement would be unenforceable. In particular, assuming the truth of the allegations in the complaint, OYA nonetheless contends that the misrepresentation alleged could not render the agreement unenforceable. OYA points to a clause in the agreement that states "neither the State of Oregon, OYA, nor any of their agents or attorneys has made any representations or promises concerning the terms or effects of this agreement other than those expressly set forth herein." In light of that provision, according to OYA, "plaintiff cannot argue that defendants affirmatively made any promises to him relating to the conduct of the criminal investigation."

We are unpersuaded by OYA's argument that, as a matter of law, the disclaimer clause in the settlement agreement precludes plaintiff from going forward on his contention that the release should not be enforced because OYA's misrepresentations induced him to enter into the agreement. A contract may be avoided on the basis of fraudulent representations in the inducement despite a disclaimer clause where the fraud complained of vitiates the entire transaction, including the disclaimer clause. *Wilkinson v. Carpenter*, 276 Or 311, 318-19, 554 P2d 512 (1976) (citing *Sharkey v.*

---

[3] Defendant does not claim that the release explicitly and unambiguously released fraud in the inducement claims. *See Lindgren v. Berg*, 307 Or 659, 772 P2d 1336 (1989) (a sufficiently broad and unambiguous release could bar a claim for fraud in the inducement of the release).

*Burlingame Co.*, 131 Or 185, 282 P 546 (1929)); *id.* at 319 (where a party waived reliance on any previous representations by contractual disclaimer, absent a showing of actual fraud, the party could not avoid the effect of the disclaimer); *see also Bodenhamer v. Patterson*, 278 Or 367, 370-73, 563 P2d 1212 (1977) (a party who was induced to enter into a contract by a material misrepresentation on which the party relied may rescind the contract even though the contract contains a disclaimer clause expressly disclaiming reliance on "any representations, warranties, guarantees or covenants" by the other party). Again, plaintiff alleged that, although OYA knew that plaintiff would likely be criminally charged as a result of events leading to his termination and OYA, indeed, encouraged the prosecution, it both failed to disclose that information to plaintiff and affirmatively represented to him during settlement discussions that he would have no further legal issues with respect to those events. Thus, plaintiff's pleadings alleged that OYA fraudulently induced plaintiff to enter into the agreement.

OYA, nonetheless, asserts that, even accepting plaintiff's allegations as true, any misrepresentation "about whether criminal charges would be filed was not a fact material to the resolution of the civil claims between these parties." In other words, OYA asserts that, even if there was a misrepresentation, that misrepresentation was not material and, therefore, as a matter of law, could not be a basis to rescind the settlement agreement. "A misrepresentation is material where it would be likely to affect the conduct of a reasonable [person] with reference to a transaction with another person." *Millikin v. Green*, 283 Or 283, 285, 583 P2d 548 (1978). Determinations of materiality are "generally committed to the trier of fact." *OPERB v. Simat, Helliesen & Eichner*, 191 Or App 408, 436, 83 P3d 350 (2004), *rev withdrawn*, 340 Or 411 (2006); *see Everts v. Holtmann*, 64 Or App 145, 151-52, 667 P2d 1028, *rev den*, 296 Or 120 (1983) (materiality may be resolved as a matter of law only if reasonable minds could not differ).

Here, plaintiff asserted that the misrepresentation was material. He alleged that he was assured that, after entering into the settlement with OYA, he would not have any further legal issues and, had he known that there would

likely be criminal charges as a result of events leading to his termination—charges that he alleged were encouraged by OYA—he would not have entered into the agreement. We cannot say that no reasonable person would consider the alleged misrepresentation to be material. Accordingly, we reject OYA's contention that, as a matter of law, the misrepresentation was not material and could not be a basis to conclude that the release is unenforceable. In light of those conclusions, the trial court erred in concluding on the pleadings that the release was enforceable, despite plaintiff's assertions that his execution of the settlement agreement was induced by material misrepresentations on the part of OYA.

Furthermore, the trial court was incorrect in concluding that, as a matter of law, the release contained in the settlement agreement precluded all of plaintiff's claims. Specifically, the court could not dismiss plaintiff's claims for malicious prosecution and intentional interference with a prospective economic relationship on the basis of the agreement. As noted, plaintiff asserts that his claims for malicious prosecution and intentional interference with a prospective economic relationship should not have been dismissed based on the settlement agreement "because the conduct and facts alleged in Plaintiff's complaint occurred after the execution of the settlement agreement and were based on unrelated operative facts." According to plaintiff, although he "agreed to drop his grievance and release OYA from liability related to his employment," he did not "release future tort liability for harm when the facts that give rise to the claims had not yet occurred." Furthermore, he asserts that a contractual provision in which one party "agrees that another party will be exempted from future tort liability for harm caused intentionally or recklessly is void as against public policy." OYA responds that, as to the malicious prosecution and intentional interference claims, "the facts underlying the [criminal] charges were known to the parties prior to execution of the settlement agreement, and plaintiff released all 'potential claims' relating to them. Thus, the settlement agreement is a defense to those claims." Accordingly, the parties agree that the release of "potential claims" in the agreement relates to liability for facts that existed at the

time of the agreement and does not relate to future torts where the facts that give rise to the claims had not yet occurred. OYA asserts that the circumstances out of which these claims arise were known to the parties at the time of the agreement.[4]

Again, the settlement agreement states that plaintiff was dismissed and filed a grievance of that action and that the parties wish "to resolve [plaintiff's] grievance on mutually satisfactory terms without further hearing or litigation of any kind." It further provides that the "Agreement constitutes the good faith resolution of all claims or potential claims grievant *may have* against the State and OYA[.]" (Emphasis added.) Thus, the agreement does not purport to (and the parties do not contend that it does) release OYA from liability for future intentional torts for which the underlying facts have not yet occurred.

As noted, to obtain judgment on the pleadings on those claims, OYA had the burden to establish that, assuming the truth of the allegations in the complaint, it was, nonetheless, entitled to prevail. However, the complaint alleges that, after the parties entered into the settlement agreement, criminal charges were brought against plaintiff and those charges were resolved in his favor, and also that, as a result of the charges, he was terminated from employment with ODFW.

The elements of a malicious prosecution claim are

"'(1) the institution or continuation of the original criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution.'"

*Blandino v. Fischel*, 179 Or App 185, 190-91, 39 P3d 258, *rev den*, 334 Or 492 (2002) (quoting *Rose (Betty) v. Whitbeck*, 277 Or 791, 795, 562 P2d 188, *modified on other grounds*,

---

[4] Given the parties' agreement on the operative extent of the release provision, we need not decide whether a release of future, unknown claims could be enforced. *See Patterson v. American Medical Systems, Inc.*, 141 Or App 50, 55, 916 P2d 881, *rev den*, 324 Or 229 (1996) ("It is axiomatic that a release cannot be construed to include claims not within the contemplation of the parties.").

278 Or 463, 564 P2d 671 (1977)). Thus, plaintiff's claim for malicious prosecution was necessarily predicated on the institution and resolution of criminal proceedings against him and, at the very least, there are factual issues regarding when that occurred. Accordingly, the trial court erred in concluding, based on the pleadings, that, as a matter of law, the release contained in the settlement agreement precluded plaintiff's malicious prosecution claim.

Similarly, an intentional interference claim consists of the following elements:

> "(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages."

*McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995). Plaintiff alleged here that OYA intentionally interfered with his employment (and prospective employment) by encouraging and participating in the criminal charges and their prosecution. As discussed above, according to the complaint, plaintiff was not criminally charged until after execution of the settlement agreement. Accordingly, the trial court erred in concluding, as a matter of law, that the release contained in the settlement agreement precluded plaintiff's intentional interference claim.

For those reasons, we agree with plaintiff that the trial court incorrectly granted judgment on the pleadings based on the settlement agreement. Accepting the truth of the allegations in the complaint, OYA was not entitled to prevail as a matter of law on the issues of (1) the enforceability of the release or (2) whether the release precluded plaintiff's malicious prosecution and intentional interference claims. For those reasons, OYA was not entitled to judgment on the pleadings on any of plaintiff's claims.

Finally, we note, in any event, that the trial court erred when it dismissed the claim for declaratory relief. "A claim for declaratory relief may be dismissed only if there is no justiciable controversy. If there is such a justiciable

controversy, the court must dispose of the matter by a judgment containing a declaration as to the matter in dispute." *Advance Resorts of America, Inc. v. City of Wheeler*, 141 Or App 166, 180, 917 P2d 61, *rev den*, 324 Or 322 (1996) (internal citations omitted) (addressing dismissal of claim for declaratory relief in summary judgment context). That may be done, where appropriate, in the context of granting a judgment on the pleadings, but the end result still must be a judgment declaring the rights of the parties, not a judgment of dismissal. Here, OYA did not (and does not) contend that the claim for declaratory relief did not involve a justiciable controversy. Instead, as noted, it asserts that the settlement agreement was valid and enforceable. However, that is not a basis on which the trial court could dismiss the claim for declaratory relief. Instead, because there was a justiciable controversy, the court could dispose of the claim for declaratory relief only by entering a judgment containing a declaration regarding the validity and enforceability of the agreement.

Reversed and remanded.