No. 8 March 3, 2016 639

IN THE SUPREME COURT OF THE
STATE OF OREGON

Gerald L. ROWLETT,
an individual;
Westlake Development Company, Inc.,
an Oregon corporation; and
Westlake Development Group, LLC,
an Oregon limited liability company,
*Respondents on Review,*

*v.*

David G. FAGAN,
an Oregon resident;
James M. Finn, an Oregon resident;
and Schwabe Williamson & Wyatt, PC,
an Oregon professional corporation,
*Petitioners on Review.*

(CC 090101006; CA A146351; SC S062451)

On review from the Court of Appeals.*

Argued and submitted May 12, 2015.

Christopher T. Carson, Kilmer, Voorhees & Laurick, P.C., Portland, argued the cause for petitioners on review. Stephen C. Voorhees filed the brief. With him on the brief was Candice R. Broock.

David W. Melville, The Law Offices of David Melville, Portland, argued the cause and filed the brief for respondents on review. With him on the brief was Katherine R. Heekin, The Heekin Law Firm, Portland.

Scott A. Shorr, Stoll Stoll Berne Lokting & Shlachter PC, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Janet M. Schroer, Hart Wagner LLP, Portland, filed the brief for *amicus curiae* Professional Liability Fund. With her on the brief was Matthew J. Kalmanson.

_____
\* On appeal from the Multnomah County Circuit Court, Henry Kantor, Judge. 262 Or App 667, 327 P3d 1 (2014).

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, and Brewer, Justices.**

WALTERS, J.

The decision of the Court of Appeals is reversed in part and affirmed in part. The case is remanded to the Court of Appeals to address plaintiffs' remaining assignments of error.

_____

** Linder, J., retired December 31, 2015, and did not participate in the decision of this case. Nakamoto, J., did not participate in the consideration or decision of this case.

## WALTERS, J.

Rowlett and his two companies, Westlake Development Company, Inc., and Westlake Development Group, LLC (plaintiffs), filed an action for malpractice against the law firm Schwabe, Williamson, and Wyatt, PC, (Schwabe) and lawyers Fagan and Finn (collectively, defendants), alleging claims for negligence, negligent misrepresentation, breach of fiduciary duty, and claims related to attorney fees. Defendants had represented plaintiffs in an action against plaintiffs' business partners in Sunrise Partners, LLC (Sunrise). Plaintiffs settled the Sunrise litigation in 2007, and, soon thereafter, initiated the malpractice action, alleging that they would have had a better outcome in the Sunrise litigation but for the mishandling of their case by defendants. A jury ultimately found that defendants were negligent in their representation of plaintiffs, but that defendants' negligence did not cause plaintiffs any damage. The jury also reached a defense verdict on the breach of fiduciary duty, negligent misrepresentation, and attorney fee claims. Plaintiffs appealed, asserting seven assignments of error. The Court of Appeals reversed as to two of those assignments of error and remanded the case for a new trial. *Rowlett v. Fagan*, 262 Or App 667, 327 P3d 1 (2014). For the reasons we discuss below, we now reverse the decision of the Court of Appeals as to those two assignments of error and remand the case to the Court of Appeals to address plaintiffs' remaining assignments of error.[1]

---

[1] Plaintiffs assigned error to the trial court's (1) grant of defendants' motion to dismiss their negligence claim to the extent it was based on oppression allegations; (2) denial of their motion *in limine* to limit the use in the malpractice case of evidence of the settlement in the Sunrise litigation; (3) ruling permitting the settlement date in the Sunrise litigation to be included on the verdict form among other dates for valuing Rowlett's equity interest in Sunrise; (4) and (5) rulings permitting a certain defense witness to testify as an expert at trial in the malpractice case and to use a certain valuation method to value Rowlett's interest in Sunrise; (6) grant of defendants' motion to dismiss plaintiffs' damage claim for attorney fees and costs that plaintiffs had paid to Schwabe in the Sunrise litigation; and (7) grant of defendant's summary judgment motion regarding plaintiffs' claim for attorney fees that they would have recovered from the Sunrise defendants, as measured by the fees that they incurred in the malpractice action. As we will discuss, the Court of Appeals agreed with plaintiffs and reversed as to assignments of error (1) challenging the granting defendants' motion to dismiss the oppression claim, and (3) challenging the inclusion of the settlement date on the verdict form. The court rejected assignment of error (6), relating to plaintiffs'

The facts of this case are complicated and are explained in detail in the Court of Appeals' decision. For our purposes here, the following summary suffices. Rowlett is a real estate developer and is the sole principal in his two companies. He had an option to purchase for development a property in Gresham, Oregon, referred to as the Kelley Creek property. Rowlett's companies also obtained options to purchase three properties in Happy Valley, known as the Sunnyside Road properties, which Rowlett also wished to develop. In the fall of 2000, Rowlett and two other individuals, Pruett and Baron, formed Sunrise, a limited liability corporation (LLC), to finance both projects. After Sunrise was formed, Rowlett assigned his options to purchase the Kelley Creek property and the Sunnyside Road properties to Sunrise. Sunrise initially struggled to find other investors and had difficulty raising money. It soon stopped making payments on the Kelley Creek option and lost the option to purchase that property. Sunrise also defaulted on a purchase agreement for one of the Sunnyside Road properties. Sunrise sought other investors, and Baron and Pruett then began taking actions that, in Rowlett's view, disregarded his interest in Sunrise. Among other things, for example, they excluded Rowlett from meetings and made another investor, Keys, a member of Sunrise over Rowlett's objection.

In June 2002, Rowlett contacted Schwabe for advice. Rowlett had lost approximately $90,000 when the Kelley Creek purchase option lapsed, and he was concerned about the actions that Baron and Pruett had taken at Sunrise. Schwabe assigned the matter to Fagan, a junior lawyer with only three to four years of experience. In November 2002, Fagan filed a complaint on behalf of plaintiffs in Multnomah County Circuit Court, against Pruett, Baron, Keys, and others, alleging that those defendants had intentionally allowed the Kelley Creek option to lapse, causing Rowlett to lose the value of his investment

---

claim for reimbursement of fees paid to Schwabe in the Sunrise litigation, but it did not reach assignment of error (7), because, having granted plaintiffs a new trial on their negligence claim, the court concluded that that issue could be resolved on remand. Additionally, in light of its reversal on the verdict form issue, the Court of Appeals did not reach assignment of error (2), related to the denial of plaintiffs' motion *in limine*, or assignments of error (4) and (5), related to the defense witness testimony.

in that property. The complaint sought general damages in the amount of $670,000. However, a clause in the Sunrise operating agreement required arbitration of disputes. That fact was called to Fagan's attention, and, in January 2003, Rowlett stipulated to dismissal of the complaint pending arbitration.

Fagan did not file an arbitration demand until December 2003. That arbitration demand's "statement of claim" contained the same claims as had been alleged in the circuit court complaint, and also contained allegations relating to actions that Sunrise members had taken, allegedly to the detriment of Rowlett's interests, after the circuit court complaint was filed. Specifically, the 2003 arbitration statement alleged that, in March and April 2003, the Sunrise members removed Rowlett as manager of Sunrise, admitted another new member, Robinson, without Rowlett's consent, called meetings without telling him, and took other actions to dilute the value of Rowlett's stock. The arbitration statement alleged that those facts established a breach of fiduciary duty by Baron and Pruett. Unlike a later-filed arbitration statement, the 2003 statement did not specifically allege an additional claim for oppression, nor did it contain a demand for the compulsory buyout of Rowlett's interest.[2] The 2003 arbitration demand sought damages for the diminution in the number and value of Rowlett's shares in Sunrise, as well as $675,000 in damages for defendants' breach of fiduciary duty, fraud, conspiracy, and misrepresentation.

Fagan took no significant additional steps thereafter to pursue Rowlett's claims; he left Schwabe in May 2005 to take another position. When Fagan left, another Schwabe lawyer, Finn, took over the case, met with Rowlett, and began reviewing the file. Finn also began looking for an arbitrator and reinitiated communication with Sunrise, sending a letter to opposing counsel in October 2005 discussing discovery issues in the arbitration. At that point, Keys' counsel objected to further arbitration and, in March 2006, filed a motion to reinstate the 2002 case and dismiss it with prejudice for lack of prosecution.

---

[2] It also did not assert any claim against Sunrise.

Meanwhile, in October 2005, Baron, Keys, and Robinson arranged for Sunrise to distribute $5.8 million to all Sunrise members except Rowlett. Rowlett received nothing. Additionally, Baron, Keys, and Robinson amended the Sunrise operating agreement to remove Rowlett as a member of Sunrise.

In April 2006, Finn filed an amended arbitration statement naming Baron, Keys, and Sunrise as respondents and adding allegations pertaining, among other things, to the capital distribution to all Sunrise partners other than Rowlett and his removal as a member of Sunrise. The statement alleged a claim for breach of fiduciary duty and, for the first time, specifically alleged a claim for oppression. The arbitration statement alleged that Rowlett had been deprived of the entire value of his ownership interest in Sunrise and that he was entitled to a buyout of that ownership interest in an amount of at least $900,000.

In September 2006, the circuit court granted Keys' motion to reinstate and dismiss the 2002 complaint. In a letter opinion, the court stated that it would dismiss all claims that had been pleaded in the original complaint with prejudice. In March 2007, Finn filed a second complaint in Multnomah County Circuit Court, against Sunrise, Baron, Keys, Robinson, and others, alleging essentially the same claims as had been alleged in the 2006 arbitration statement, and again seeking approximately $900,000 in damages. Like the 2006 arbitration statement, the 2007 complaint included an oppression claim against all defendants, as well as breach of fiduciary duty claims that plaintiffs or Rowlett asserted against the defendants, individually and as a group, and a breach of contract claim against Sunrise.

By late 2007, the real estate market had dropped. In November 2007, Sunrise offered to settle the case for $200,000 and plaintiffs' reasonable attorney fees as determined by the circuit court, and Rowlett accepted the offer. The court awarded part of the fees Schwabe had billed plaintiffs for work on the 2007 litigation, approximately $60,000.

In 2009, plaintiffs filed this malpractice action against defendants, alleging that defendants had committed malpractice in the Sunrise litigation and had caused

plaintiffs to settle for significantly less than what the Sunrise defendants would have paid if the case had been litigated properly. The complaint alleged negligence claims against all defendants, based on allegations that defendants had failed to act promptly and competently in various respects after filing the 2002 complaint in circuit court.[3] Specifically, the complaint alleged that defendants were negligent in failing to arbitrate the Sunrise dispute within six months as required by the Sunrise operating agreement, in failing in various ways to gather evidence to support and prove plaintiffs' claims, in failing to competently represent plaintiffs' interests in various ways, in failing to adequately communicate with plaintiffs, and, as relevant here, in "[f]ailing to allege plaintiffs' [oppression] claims in a timely manner" and in "fail[ing] to recognize that the factual circumstances gave rise to [an oppression] claim related to Rowlett's interest in Sunrise Partners, LLC."[4] With respect to damages, plaintiffs alleged that defendants' damages included the following: "The difference between the settlement amount in the 2007 case and *** the value of Plaintiff Rowlett's equity interest in Sunrise Partners LLC as of either March 13, 2003 or October 7, 2005, which is $2,200,000."

A few weeks before trial, defendants moved to dismiss certain claims and individual allegations from the complaint. As relevant here, defendants moved to dismiss all of the allegations in the complaint relating to defendants' failure to allege an oppression claim in the Sunrise litigation. The trial court granted that motion in part.[5] During the ensuing trial, both parties presented evidence relating to plaintiffs' claims in the Sunrise litigation, including evidence and testimony pertaining to the value of Rowlett's

---

[3] The complaint was amended three times before trial; we quote in this opinion from the operative complaint—the third amended complaint—filed in February 2010.

[4] Plaintiffs also alleged claims for negligent misrepresentation, negligent supervision, and breach of fiduciary duty, as well as various claims relating to attorney fees. As noted, the jury returned defense verdicts on those claims. They are not at issue on review.

[5] As we will discuss in more detail below, the trial court agreed to strike two allegations of negligence pertaining to defendants' failure to timely bring a claim against the Sunrise defendants for oppression, but it left other allegations referring to the oppression claim in the complaint.

interest in Sunrise on March 13, 2003, when Rowlett was removed as manager of Sunrise, and on October 7, 2005, when Baron, Keys, and Pruett disbursed $5.8 million in Sunrise assets to themselves and allegedly removed Rowlett as a member of Sunrise. Rowlett presented evidence that the value of his interest in Sunrise on March 13, 2003, was over $1 million, and on October 7, 2005, was over $2.2 million. Defendants responded with evidence valuing Rowlett's interest in Sunrise at about $30,000 as of March 2003, and at either $108,000 or $355,000 in October 2005, depending on which operating agreement controlled.

At the conclusion of the trial, the court gave the jury a verdict form that asked the jury to determine whether defendants were negligent and if so, whether defendants' negligence had caused injury to plaintiffs and in what amount. In the event that the jury assessed damages, the verdict form also asked the jury to choose among three "valuation dates" for Rowlett's equity interest in Sunrise: March 13, 2003; October 7, 2005; and December 7, 2007. Plaintiffs had objected to including that third date on the jury form. Plaintiffs had argued that only the first two dates—dates on which Rowlett claimed that defendants had taken actions to effectively squeeze him out of Sunrise—should appear on the verdict form. Defendants had argued that the third date—the settlement date—also should appear on the verdict form, because their witnesses had testified that the sum for which plaintiffs settled in 2007 was appropriate to compensate Rowlett for his losses in the Sunrise case and that it either exceeded or approximated the value of his interest in Sunrise in March 2003 and October 2005.

As noted, the jury ultimately found that defendants were negligent in their representation of plaintiffs but that defendants' negligence was not a cause of damages to plaintiff. The jury did not, therefore, answer the question on the verdict form involving valuation dates.

Plaintiffs appealed the jury's verdict to the Court of Appeals, assigning error to seven trial court rulings. As pertinent here, plaintiffs asserted that the trial court erred in dismissing two allegations in the complaint relating to defendants' negligent failure to timely allege an oppression claim

and that the trial court erred in granting defendants' motion to include on the verdict form the date that the Sunrise litigation settled as an alternative date for valuing Rowlett's interest in Sunrise. The Court of Appeals agreed with plaintiffs and reversed the rulings of the trial court as to those assignments of error.[6] In this court, defendants challenge both of those aspects of the Court of Appeals' decision.

## A. *Plaintiffs' Oppression Allegations*

We turn first to the Court of Appeals' reversal of the trial court's ruling striking two allegations from the malpractice complaint relating to defendants' failure to timely assert an oppression claim in the Sunrise litigation. In a pretrial motion in the malpractice case, defendants moved to dismiss the complaint to the extent that it alleged negligent failure to timely press an oppression claim, arguing that Sunrise was an LLC, and no claim for oppression by an LLC member against an LLC or other members of an LLC exists in Oregon under either the LLC statutes or the common law. Defendants argued that, because plaintiffs never had a viable oppression claim, it could not have been malpractice for defendants to have failed to raise such a claim earlier in the Sunrise litigation.

Defendants made their motion under ORCP 21 G(3), which provides:

> "A defense of failure to state ultimate facts constituting a claim, a defense of failure to join a party indispensable under Rule 29, and an objection of failure to state a legal defense to a claim or insufficiency of new matter in a reply to avoid a defense, may be made in any pleading permitted or ordered under Rule 13 B or by motion for judgment on the pleadings, or at the trial on the merits. The objection or defense, if made at trial, shall be disposed of as provided in Rule 23 B in light of any evidence that may have been received."

As the Court of Appeals pointed out, under that rule, a failure-to-state-a-claim defense may be asserted at three different junctures: in a pleading under Rule 13 B, by motion

---

[6] Plaintiffs' other assignments of error in the Court of Appeals and the Court of Appeals' disposition of those assignments of error are set out at 358 Or at 641-42 n 1. None is at issue on review.

for judgment on the pleadings, and at trial on the merits. *Rowlett*, 262 Or App at 678. Plaintiffs had argued to the trial court that ORCP 21 G(3) does not itself provide a mechanism for a defendant to seek dismissal for failure to state a claim just before trial, and they challenged defendants' motion on that ground. The trial court, however, ignored that procedural problem and considered defendants' motion, ruling as follows:

> "As to the oppression claim, it's also out. The plaintiff has not provided me with any basis to permit this except for the broad language of the LLC statute and I disagree with you. I don't think it's as broad—I think it's actually more restrictive and it does not include the opportunity to demonstrate oppressive conduct.
>
> "Even if it did I would conclude as a matter of law that the breach of fiduciary duty claims, which exist from the exact same conduct, and there is no other, would provide a sufficient remedy in a case where we are now.
>
> "After all, we're talking about the legal malpractice claim. We can't consider dissolution obviously. And so what's the alternative to dissolution here? It's not really—it doesn't work. And so even if I [*sic*] were permitted to go forward, I wouldn't permit a remedy under it. So you can't have any in this particular case.
>
> "I'd appreciate—I'm not saying as a matter of law there is no such thing as a—an oppression or squeeze-out claim under an LLC. I'm saying the plaintiff has not provided me with a basis for it. I'm still wondering out there. I still think there might be something out there, but I haven't been shown it."

The trial court did not grant defendants' request to strike *all* of the allegations in the complaint referencing an oppression claim. Rather, it struck two allegations of negligence: "[f]ailing to diligently prepare and pursue plaintiffs' claims by * * * [f]ailing to allege plaintiffs' [oppression] claims in a timely manner," and "[f]ailing to competently represent plaintiffs' interests by * * * [d]efendant Fagan's failure to recognize that the factual circumstances gave rise to [an oppression] claim related to Rowlett's interest in Sunrise Partners, LLC." That ruling left in the complaint several factual allegations referencing an oppression claim, including

an allegation that Schwabe failed to timely hire experts to evaluate Rowlett's interest in Sunrise for his oppression claim, and an allegation that, had Schwabe timely asserted an oppression claim, Rowlett would have received a larger monetary award for his Sunrise ownership interest than he received in settlement.

On appeal, given the parties' and the trial court's treatment of defendants' motion, and given the fact that plaintiffs had had an opportunity to, and did, in fact, present arguments on the merits of defendants' motion, the Court of Appeals reviewed defendants' pretrial motion as one for judgment on the pleadings under ORCP 21 B ("After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings."). *Rowlett*, 262 Or App at 679. As the Court of Appeals explained, to prevail on a motion for judgment on the pleadings, a party must show that "the nonmoving party cannot prevail as a matter of law." *Id*. On review of a judgment on the pleadings, the appellate court accepts as true all well-pleaded allegations in the complaint. *Id*. (citing *Boyer v. Salomon Smith Barney*, 344 Or 583, 586, 188 P3d 233 (2008)). Judgment on the pleadings may be granted only when the pleadings, taken together, affirmatively show that the plaintiff has no claim against the defendant. *Id*. The Court of Appeals ruled that that meant that,

> "to obtain a judgment on the pleadings, defendants had the burden to establish that, *assuming the truth of the allegations in the complaint*, they were entitled to prevail on that part of plaintiffs' negligence claim. Looking solely at the allegations in the complaint, plaintiffs sufficiently alleged negligence."

262 Or App at 680 (emphasis in original).

To succeed in a malpractice claim based on negligence, a plaintiff must prove a duty that runs from the defendant to the plaintiff, a breach of that duty, a resulting harm to the plaintiff measurable in damages, and causation—a causal link between the breach of duty and the harm. *Stevens v. Bispham*, 316 Or 221, 227, 851 P2d 556 (1993). The Court of Appeals pointed out that plaintiffs alleged that the oppression claim arose in 2003, that

defendants did not assert the oppression claim on Rowlett's behalf until the 2006 amended arbitration statement and the 2007 complaint, and that plaintiffs would have received a higher monetary value for Rowlett's ownership interest in Sunrise if defendants had pressed an oppression claim in a timely manner between 2003 and 2005. *Rowlett*, 262 Or App at 680. According to the Court of Appeals, the trial court was required to assume, for purposes of defendants' motion for judgment on the pleadings, that all of those allegations were true. And, the Court of Appeals concluded, because those allegations, if true, would have proved defendants' duty to plaintiffs, their breach of that duty, harm to plaintiffs, and causation, the trial court erred in ruling that defendants were entitled to judgment on the pleadings. *Id*. at 280-81.

In so concluding, the Court of Appeals rejected defendants' argument that it was relevant, even dispositive, that plaintiffs did not have a viable claim for oppression because Oregon law does not allow an oppression claim to be brought by an LLC member against an LLC or its other members. As the court stated,

"it is apparent that the trial court placed the burden on plaintiffs to establish the viability of an oppression claim as a legal matter, regardless of what plaintiffs had alleged. However, that is not the applicable standard on a motion for judgment on the pleadings."

*Id*. at 681. The court offered no support for that proposition, but noted that, if "defendants [had] wanted to test plaintiffs' *proof* before trial," they could have filed a timely motion for summary judgment under ORCP 47 and argued that there was no material dispute of facts and that they were entitled to judgment as a matter of law. *Id*. (emphasis in original). However, had that happened, the Court of Appeals stated, plaintiffs could have proven defendants' breach of their duty of care through an expert, and, in any case, defendants did not file such a motion. *Id*. at 681-82. Moreover, the Court of Appeals held, even if defendants were correct that an oppression claim by a minority member of an LLC against the LLC is not viable in Oregon,

"defendants still could have breached their duty of care by failing to assert a colorable claim of oppression earlier in the Sunrise litigation."

*Id.* at 682. That is so, the Court of Appeals stated, because "an assertion of a colorable claim could have altered the outcome for Rowlett considerably by giving him increased leverage to secure a settlement on much more favorable terms than what he obtained." *Id.* at 686.[7]

As a preliminary matter, we observe that it appears that an implicit premise of the Court of Appeals' holding is that the legal viability of an oppression claim against an LLC in Oregon is a question of fact that, if alleged, must be accepted as true, and if challenged by a motion for summary judgment, may be proved or disproved by expert testimony. Yet the legal viability of any particular claim under Oregon law—including an oppression claim in the LLC context—is strictly a matter of law. Thus, the legal viability of a claim or of a position that a lawyer failed to take is decided by the court, based on argument by the parties; an allegation in a complaint that a claim is viable is not a factual allegation and it need not be accepted as true. *Chocktoot v. Smith*, 280 Or 567, 572-74, 571 P2d 1255 (1977). For that reason, the trial court could properly have ruled on defendants' motion for judgment on the pleadings and concluded, based on defendants' and plaintiffs' legal arguments on the point, that the pleadings affirmatively showed that plaintiffs had no claim against defendants for oppression, because no such claim for relief exists in Oregon.[8]

---

[7] Judge Armstrong concurred in the majority's disposition of the case but wrote separately to explain that he did not agree with the majority's conclusion that, because the plaintiffs' claim for oppression was colorable and there was an evidentiary basis for that claim, the trial court had erred in dismissing the allegations of negligence based on the oppression allegations. Judge Armstrong stated that that argument had not been presented below or even argued to the Court of Appeals on appeal, and, further, that that conclusion "also results in the unsettling proposition that a party may be held liable for malpractice for failing to assert a claim that is not, in fact, cognizable." *Rowlett*, 262 Or App at 700 (Armstrong, J., concurring). Nonetheless, Judge Armstrong agreed with the majority that the trial court's ruling should be reversed, because, in his view, an oppression claim by a minority member of an LLC is viable in Oregon. *Id.*

[8] It also follows that, to extent the Court of Appeals was suggesting that expert testimony would have been appropriate to prove whether or not a claim for oppression was viable in Oregon as a matter of law, the court was incorrect. Expert testimony may assist the court to determine a factual matter, but the court alone decides questions of law. *Chocktoot*, 280 Or at 573 ("The legal consequences of an attorney's failure, in the earlier case, to present a timely pleading or motion to take an appeal are matters for argument, not proof.").

We also disagree that lawyers can be held to have breached a duty of care in a malpractice action by failing to raise claims that are merely colorable, but not necessarily viable. This court has never suggested that a lawyer's duty to a client requires taking "colorable," but ultimately incorrect, legal positions. Rather, as the court has stated, a client who alleges malpractice in litigation must prove the existence of "a valid cause of action or defense, which, had it not been for the attorney's alleged negligence, would have brought about a judgment favorable to the client in the original action." *Harding v. Bell*, 265 Or 202, 205, 508 P2d 216 (1973). *See also Kelly v. Hochberg*, 349 Or 267, 273, 243 P3d 62 (2010) (in legal malpractice case, first issue is whether plaintiff would have been successful had he timely filed tort action); *Milton v. Hare et al.*, 130 Or 590, 598, 280 P 511 (1929) ("Unless [the client] has a good cause of action against [her adversary], whom she accuses of having cheated and defrauded her, she has no cause of action against [the defendant lawyers]. Unless she had a good cause of action against [her adversary] for fraud, she lost nothing by the conduct of [the defendant lawyers], even though they were guilty of gross negligence.").

Using "colorable" as the standard to define a lawyer's duty to a client would place lawyers in an untenable position, given that, any time an area of law is unsettled, both sides arguably are "colorable," and, in every case that goes to trial, one side loses. As one commentator has stated,

> "Of all professionals, *** lawyers are the most vulnerable to an error revealed in hindsight. The essence of the legal system portends a high frequency of errors. Unlike any other profession, the practice of law often involves a process by which attorneys must take positions inconsistent to those of their clients' adversaries, antagonists or competitors. Usually, only one side will prevail."

Ronald E. Mallen, 2 *Legal Malpractice* § 19:1, 1226 (2016 ed). For that reason, the commentator states, it is "universally recognized" that "an attorney is not liable for an error in judgment on an unsettled proposition of law." *Id*.

That conclusion resolves the Court of Appeals' suggestion that defendants could have breached their duty of

care to plaintiffs by failing to assert a colorable claim of oppression earlier in the Sunrise litigation because "such an assertion of a colorable claim could have altered the outcome for Rowlett considerably by giving him increased leverage to secure a settlement on much more favorable terms than what he obtained." *Rowlett*, 262 Or App at 686. Whether plaintiffs could have proved that factual proposition is not of consequence. A lawyer cannot be held liable for failing to assert a claim that is colorable but not viable.

For all of the foregoing reasons, we reject the bases for the Court of Appeals' conclusion that the trial court erred in dismissing the two oppression allegations from plaintiffs' complaint. We turn now to consider the issue as it was framed and decided in the trial court. In the trial court, the dispute over whether to strike the oppression allegations in the malpractice complaint centered on whether a claim for damages for oppression by one member of an LLC against the LLC or its other members is available under Oregon statutory or common law, and thus would have been available to Rowlett against Sunrise and other Sunrise members in the underlying litigation, so that defendants could have been negligent for failing to assert it in a timely manner. The trial court struck the two oppression allegations for two reasons: First, the court was not persuaded by plaintiffs' argument that an oppression claim is viable in the LLC context in Oregon; and second, it concluded that plaintiffs' breach of fiduciary duty claims in the Sunrise litigation were based on exactly the same conduct as would have supported an oppression claim, and, therefore, those breach of fiduciary duty claims "would provide a sufficient remedy in a case where we are now."

On appeal to the Court of Appeals, plaintiffs asserted that they had had a viable claim for oppression against the Sunrise defendants and would have been entitled to a compulsory buyout or judicial dissolution if the claim had been asserted in a timely manner. However, because of defendants' negligence, plaintiffs argued, the oppression claim was not pressed until 2006, by which time the market had dropped and the Sunrise defendants had plundered Sunrise's assets. Therefore, they argued, the trial court erred in dismissing the two specifications of negligence pertaining to

defendants' failure to timely assert an oppression claim. In response, defendants repeated their arguments that Oregon law does not recognize a claim for oppression by a member of an LLC against an LLC or its other members. In addition, they argued that dismissal of the two oppression allegations from the malpractice complaint had no effect on the outcome, and, therefore, any error was harmless. As already discussed, the Court of Appeals did not address the viability of an oppression claim and instead found that the trial court erred in dismissing the two oppression allegations because an oppression claim was "colorable." The Court of Appeals also rejected defendants' harmless error arguments.[9]

On review, we agree with defendants that, even if the trial court erred in concluding that an oppression claim by a minority member of an LLC against the LLC or its other members is not viable in Oregon, an issue we do not reach, any such error was harmless. As we will explain, striking the two negligence allegations concerning defendants' failure to raise the oppression claim earlier in the Sunrise litigation did not affect the outcome of the malpractice case.

First, the trial court did not strike all of the allegations referring to plaintiffs' oppression claim from the malpractice complaint. As noted, the court did not strike allegations that Schwabe failed to timely hire experts to evaluate Rowlett's interest in Sunrise for his oppression claim and that, had Schwabe timely asserted an oppression claim, Rowlett would have received a greater sum for his Sunrise ownership interest. In addition, the court never read the complaint to the jurors, and it never instructed the jury that any allegations had been stricken from it.

_____

[9] Defendants proffered a two-pronged harmless error analysis. They argued that dismissing the oppression allegations had no effect on how the case was tried or its outcome because the same facts would have established both a breach of fiduciary duty claim and an oppression claim against the Sunrise defendants, and plaintiffs were able to seek identical relief from defendants in the malpractice case based on the breach of fiduciary duty claims in the 2007 Sunrise litigation. Alternatively, defendants argued that plaintiffs' oppression claim was equitable and would have been determined by the trial court in the Sunrise litigation, but the trial court had made clear that it would not have found that plaintiffs incurred damages because of defendants' negligence. The Court of Appeals addressed only defendants' second harmless error argument in its opinion. *Rowlett*, 262 Or App at 687.

Second, as the 2007 complaint against the Sunrise defendants makes clear, plaintiffs' oppression and breach of fiduciary duty claims were both based on the duty of "good faith" that the other Sunrise members owed to Rowlett, and each supported a claim for damages measured by the value of Rowlett's interest in Sunrise, which the 2007 complaint quantified as approximately $900,000. Plaintiffs have argued that a claim for oppression also would have entitled them to seek buyout or dissolution as a remedy in the Sunrise litigation, that those remedies were unique and unavailable for a claim for breach of fiduciary duty, and that if defendants had filed a claim for oppression earlier in the litigation and sought dissolution or buyout as remedies, then that would have put additional pressure on the Sunrise defendants to settle the case sooner, on more favorable terms. We do not understand the trial court's ruling on defendants' motion to strike as precluding plaintiffs from making that argument. As noted, plaintiffs' complaint continued to include an allegation that, had Schwabe timely asserted an oppression claim in the underlying action, Rowlett would have received a greater sum for his Sunrise ownership interest. Plaintiffs could have argued that the availability of dissolution or buyout as remedies for the Sunrise defendants' misconduct was a factor that would have led to that result. We also think it significant that, in the malpractice action, plaintiffs did not allege that defendants were negligent in failing to seek dissolution or buyout in the Sunrise litigation; that theory of negligence was neither alleged nor stricken.

Third, the central premise behind plaintiffs' argument that defendants were negligent for failing to press the oppression claim earlier is that Rowlett was entitled to the value of his interest in Sunrise on the date that the oppressive conduct occurred (between $1 million and $2.2 million, depending on the date used), but that the real estate market had dropped dramatically by 2007, when he settled the case. However, at the pretrial hearing on defendants' motion to dismiss the oppression allegations, plaintiffs' lawyer conceded that plaintiffs' breach of fiduciary duty claims against Sunrise and its other members were based on the identical conduct that would have supported an oppression claim and,

importantly, would permit an identical valuation of Rowlett's interest in Sunrise:

> "THE COURT:   Let me ask you a question. If I were to conclude that the defense is right, that there was no available oppression or squeeze-out claim and you were proceeding only under breach of fiduciary duty and negligence claims, would that affect your decisions as to valuation dates for damages or does it really matter?
>
> "[PLAINTIFFS' COUNSEL]:   The way I read the case law, there's talk about when you've got the kind of facts that amount to breach of fiduciary duty, it's intertwined with what amounts to oppressive conduct.
>
> "And so in the way that I read the case law, it appears our Appellate Courts treat it as one and the same, even though they end up being a claim at law and a claim in equity.
>
> "THE COURT:   Mm-hmm.
>
> "[PLAINTIFFS' COUNSEL]:   So we would, of course, like to continue to have all theories available to us.
>
> "THE COURT:   I understand. I'm just trying to figure out if it matters to your argument on valuation dates. It doesn't sound like it does.
>
> "[PLAINTIFFS' COUNSEL]:   No, because the breach of fiduciary duty allegations are similar.
>
> "THE COURT:   They're pretty much identical.
>
> "[PLAINTIFFS' COUNSEL]:   Exactly."

Thus, in the malpractice action, although the trial court ruled that plaintiffs could not argue that they had received a lesser sum for Rowlett's share in Sunrise due to defendants' negligent failure to timely assert an oppression claim, plaintiffs were not harmed by that ruling, because they were able to make virtually identical arguments as to the valuation dates based on defendants' alleged negligence in litigating plaintiffs' breach of fiduciary duty claim against the Sunrise defendants.

Fourth, and relatedly, although plaintiffs have couched their argument in terms of defendants' delay in asserting the oppression claim, the crux of plaintiffs'

negligence charge against Schwabe was their contention that defendants were negligent for failing to realize in 2007, at the time that the Sunrise litigation settled, that an oppression claim would have entitled Rowlett to the value of his interest on the date the oppressive conduct occurred— either March 2003 or October 2005. Rowlett asserted that defendants had not properly advised him on that point and, instead, led him to believe that the best he could hope to achieve at settlement was the value of his interest on the date of settlement. Plaintiffs' argument that the trial court's ruling striking the oppression allegations affected the outcome of the malpractice case fails to recognize that plaintiffs were permitted to pursue that identical theory under the allegations that remained in the complaint after the two oppression allegations were stricken. Plaintiffs were permitted to, and did, put on evidence from experts to establish the value of plaintiffs' interest in Sunrise in March 2003 and October 2005, and they strenuously argued during closing that they were entitled to damages based on the value of their interest in Sunrise on those dates. That is, at trial in the malpractice case, plaintiffs presented the same evidence about the date of valuation to support the same claims for damages that they would have been entitled to present had the trial court not granted defendants' motion to strike two of the negligence allegations relating to oppression.

Fifth, and finally, the stricken oppression allegations alleged alternative bases on which a jury could find that defendants had had a duty of care and that they had breached that duty. Because the jury found that defendants were negligent in their representation of plaintiffs in the Sunrise litigation, the jury necessarily found that defendants had had a duty of care to plaintiffs and that they had breached that duty.[10] It follows that the stricken alternative bases for those conclusions were unnecessary and that the

---

[10] Respecting the jury's determination that defendants were negligent, the trial court had instructed as follows:

"The law imposes a duty upon each person to use reasonable care to avoid causing harm. Reasonable care is the degree of care and judgment used by reasonably careful people in the management of their own affairs to avoid harming themselves or others.

"* * * * *

jury's verdict as to the duty and breach elements of plaintiffs' negligence claim was unaffected by the trial court's ruling striking the two oppression allegations.

Because we conclude that any error that the trial court made in striking two oppression allegations from the complaint was harmless, we hold that the Court of Appeals erred in reversing the trial court's order striking the oppression allegations from the negligence claim.

B. *The Verdict Form*

Defendants also challenge the Court of Appeals' reversal of the trial court ruling permitting the settlement date to be listed among other valuation dates on the verdict form. Some background is helpful to understand this issue.[11]

As we have discussed, the gravamen of plaintiffs' complaint against defendants was that defendants negligently valued Rowlett's interest in Sunrise as of the time of the settlement of the Sunrise litigation in 2007, but should have understood that Rowlett actually had been entitled to claim the value of his interest when the Sunrise defendants

---

*"A person is negligent, therefore, when that person does some act that a reasonably careful person would not do, or fails to do something that a reasonably careful person would do under similar circumstances."*

(Emphasis added.)

[11] We note that defendants complain that, notwithstanding that they were the prevailing parties at trial on the issues of causation and damages, it is evident throughout the part of the Court of Appeals' opinion addressing the verdict form issue that the Court of Appeals ignored the facts supporting the defense verdict on damages and causation and viewed the facts in the light most favorable to plaintiffs. Defendants are correct that, even though the jury found defendants negligent in their representation of plaintiffs in the Sunrise litigation (that is, that their representation of plaintiffs fell below the standard of care), defendants prevailed on the issues of causation and damages, and ultimately prevailed on the negligence claim in the malpractice trial, because the jury concluded that defendants' negligence was not a cause of damage to plaintiffs. We agree with defendants that the appellate courts should view the facts surrounding causation and damages in the light most favorable to them. *See Brown v. J.C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984) (appellate court does not weigh evidence, but considers the evidence, including inferences, in the light most favorable to the prevailing party). In its opinion in this case, the Court of Appeals did not specifically state how it viewed the facts in evaluating plaintiffs' contention that the verdict form misled the jury in its consideration of damages. However, as we discuss below, we agree with defendants that the Court of Appeals was required to view those facts in the light most favorable to defendants.

manifested their intent to deprive him of his interest in Sunrise—March 13, 2003, and October 7, 2005. Plaintiffs therefore contended in the complaint and at trial that they were entitled to damages in the amount of the difference between the value of Rowlett's interest on those dates and the amount Rowlett obtained in settlement on December 7, 2007. In support of their position, plaintiffs introduced expert and other testimony and evidence to explain both the legal theory supporting the propriety of valuing Rowlett's interest in Sunrise on those dates and the monetary value of his interest on those dates. Specifically, plaintiffs introduced evidence that the value of Rowlett's interest in Sunrise in March 2003 was over $1 million, and in October 2005 was over $2.2 million.

In response, defendants argued, and introduced evidence to show, that Rowlett had not actually been ousted from membership in Sunrise in October 2005, and, because Sunrise was a going concern at the time of the settlement in 2007, the settlement date was an appropriate date for valuing Rowlett's interest. Defendants also presented evidence that, regardless of whether Rowlett's interest in Sunrise was valued in 2003, 2005, or 2007, the 2007 settlement amount exceeded or approximated the value of Rowlett's interest. Specifically, defendants introduced evidence that the value of Rowlett's interest in Sunrise on the operative dates was significantly less than Rowlett claimed: about $30,000 in March 2003, and either $108,000 or $355,000, depending on which operating agreement controlled, in October 2005.

After the presentation of evidence and before the case was submitted to the jury, the parties discussed the proposed jury instructions and verdict form. Neither party objected to the following proposed jury instructions on causation and damages:

> "If you find that the defendants were negligent as claimed by the plaintiffs, then you must decide whether that negligence caused any harm to the plaintiffs. The plaintiffs, therefore, must prove facts that, but for the defendants' alleged negligence, they would have received a more favorable outcome in the original lawsuit than they actually received.

"*** *To determine whether the defendants' alleged negligence in fact resulted in a less favorable outcome for the plaintiffs, you must first determine what the outcome for the plaintiffs would have been had the defendants not been negligent. If the outcome that would have occurred is no more favorable than the outcome that did occur, then the plaintiffs' loss or damage cannot have been caused by the defendants.*

"In this case, a settlement of the underlying case occurred. The fact that a client is dissatisfied with the settlement he received does not prove that the attorney was negligent or that the attorney caused damage to the client. Likewise, the fact that a client settles its lawsuit is not conclusive evidence that the attorney was not negligent, or that the amount of the settlement necessarily reflects the actual value of the client's claims. *The client must prove that, but for the attorney's negligence, the client would not have accepted the settlement and would have subsequently achieved a better outcome, either through a higher settlement or at trial.*

"*****

"If you find that the defendants were negligent ***, then you must decide whether the plaintiffs have been damaged, and, if so, the amount of their damages.

"*****

"The parties in this case seek only economic damages, which economic damages are the objectively verifiable monetary losses that each party has allegedly incurred.

"The maximum amount the plaintiffs have claimed in all of their claims—so this covers all the different claims— are as follows:

"*First, the difference between the settlement amount in the 2007 case and the value of Mr. Rowlett's equity interest in Sunrise Partners, LLC, as of March 13th, 2003, or alternatively, October 7th, 2005.*

"The maximum amount for that item is $2,200,000."

With regard to the verdict form, plaintiffs had requested that the trial court include a question asking the jury to determine prejudgment interest in the event it found in their favor as to damages, as well as a question identifying the valuation date that the jury had used in the event

it had awarded damages. The trial court concluded that it would not permit the jury to determine prejudgment interest. The court then turned to the question whether nonetheless to include valuation dates, which, the court concluded, needed to be decided, either by the court or by the jury, for an eventual determination of prejudgment interest.

Plaintiffs' counsel explained that the operative dates, from her standpoint, were March 13, 2003, and October 7, 2005. She argued that the particular date was a question for the jury to decide, and she stated that she would argue for those dates in the alternative. Defense counsel agreed that the March 2003 date was appropriate for valuing plaintiffs' interest. However, she argued that the evidence showed that the October 2005 date was "not an actual date of oppressive conduct," because Rowlett still was a member of Sunrise on that date and the LLC remained a going concern. Defense counsel observed that Finn had testified that he had valued Rowlett's interest as a member of a going concern for purposes of the settlement and, she argued, that approach was correct.

Apparently still considering the issue in the context of prejudgment interest, the court concluded that, because there was evidence supporting both the March 2003 and October 2005 dates, those dates would go to the jury:

> "Now that I feel I heard it, I heard conflicting views, the jury is going to pick the date that they think is—where the damages started and then apply the number of damages, assuming there is any, to that date."

At that point, defense counsel interjected to offer the December 2007 date:

> "[DEFENSE COUNSEL]:   And also, the way Mr. Finn did it, which was currently as the case, in 2007. * * * December 7, 2007, when he accepted the offer of judgment. That's what we—

> "THE COURT:   You don't want—you'd rather have the—which date do you want? The—

> "[DEFENSE COUNSEL]:   This is where it gets confusing Your Honor, because Mr. Finn did it a certain way.

"THE COURT:   Yeah.

"[DEFENSE COUNSEL]:   And our position is it was a reasonable approach. So how of you deal within the time frame? They're saying it was an unreasonable settlement at that time. That's the—that's the touchstone of this case. The settlement figure. And so I agree with that.

"THE COURT:   It's conceivable the jury could conclude that is the right date. *** Three dates. December 7, 2007?

"[PLAINTIFFS' COUNSEL]:   I don't know that there's been any evidence that that is a fair value date. *** I don't believe there's ever been any testimony about December 7th, 2007, as a valuation date.

"THE COURT:   The difficulty I guess I have, [defendants], is let's assume they want to pick that date but conclude that the settlement was not enough. What would be the number that they would go to?

"* * * * *

"[DEFENSE COUNSEL]:   But to give them only those two dates when Mr. Finn did it a certain way. [A defense expert] agreed with that approach. [Another defense expert] did provide evidence as to what actually happened with Sunrise, which was consistent with Mr. Finn's approach, which is what the tax returns show. I think there's plenty of evidence that that's what's an appropriate—that's our position on this.

"THE COURT:   So if they pick that date, there's no damages; right?

"[DEFENSE COUNSEL]:   Yeah, I think that's probably right. ***

"* * * * *

"[PLAINTIFFS' COUNSEL]:   *** There was no testimony by any of the experts about—with a fair value damage claim that December 7, 2007, is a valuation date.

"THE COURT:   I'm going to permit the jury to consider all three alternatives, because Mr. Finn's testimony supports it. I don't necessarily think you need expert testimony. Mr. Finn would be viewed as an expert, but even with his background I think is—I will permit all three alternatives to be presented to the jury. They can figure it out based on what they've heard."

Ultimately, the verdict form that the court provided to the jury asked pairs of questions similar to the following for each defendant:

"QUESTION 1

"Was [a particular defendant] negligent in one or more of the ways plaintiffs claim?

"ANSWER:   (Yes or No) _____

"*Nine of you must agree on your answer to this question. If your answer is 'no,' do not answer Question 2. Proceed to Question 3. If your answer is 'yes,' proceed to Question 2.*

"QUESTION 2.

"Was [the particular defendant's] negligence a cause of damage to plaintiff?

"ANSWER:   (Yes or No) _____

"*At least the same jurors who answered 'yes' to Question 1 must also agree on your answer to Question 2. Whatever you answer, proceed to Question 3.*"

Questions 1 and 2 pertained to Fagan's negligence, Questions 3 and 4 pertained to Finn's negligence, and Questions 5 and 6 pertained to Schwabe's negligence. The jury answered "yes" to each question about whether the defendant was negligent (Questions 1, 3, and 5), and the jury answered "no" to each question about whether that defendant's negligence was "a cause of damage to plaintiffs" (Questions 2, 4, and 6).

The verdict form next instructed, "*If you have answered 'yes' to one or more of Questions 2, 4, and/or 6, proceed to Question 7. Otherwise, do not answer Questions 7 through 10, but proceed to Question 11 instead.*" Questions 7, 8, and 9 pertained to plaintiffs' contributory negligence. Question 10 asked,

"A.   What is plaintiffs' total damage?

"ANSWER:   $_____

"B.   What forms the basis, by category, for the total damages listed in subsection A?

"The difference between the settlement value of the 2007 case and:

"a.   The value of Gerald Rowlett's equity interest
      in Sunrise Partners?

"ANSWER:   $_____

"b.   The amount that Gerald Rowlett paid to
      maintain the option on the Kelley Creek
      property?

ANSWER:   $_____

*"If you entered a dollar amount in 10(B)(a), then answer
10(C).*

"C.   What was the valuation date of Gerald Rowlett's
      equity interest in Sunrise Partners?

"ANSWER:   (March   13,   2003,   October   7,   2005,   or
December 7, 2007)"

As instructed, the jurors, having answered Questions 2, 4,
and 6 "no," did not answer question 10(A), (B), or (C).[12]

On appeal, plaintiffs argued that, generally, a set-
tlement does not indicate the true value of a case, and that,
other than as a baseline, the settlement in this case, and
the settlement date, December 7, 2007, were not relevant to
the damages that the Sunrise defendants should have paid
in the Sunrise litigation. They contended that, according
to their expert, courts set the valuation date on the date
most favorable to the oppressed LLC member, which, in this
case, would have been either March 13, 2003, or October 7,
2005. Plaintiffs disputed the trial court's finding that Finn's
testimony supported the inclusion of the settlement date on
the verdict form, and argued that the inclusion of that date
permitted the jury to consider the worst possible valuation
date—the settlement date—which coincided with a signifi-
cant downturn in the real estate market.

Finally, plaintiffs argued that the error harmed
them. Plaintiffs asserted that, based on the inclusion of the
settlement date on the verdict form, defendants had argued
in closing that the settlement "was based on reality and real

_____

[12] The verdict form went on to ask similar sets of questions on the issues of
negligent misrepresentation and breach of fiduciary duty. The jury found none of
the defendants liable on either of those claims. A final set of questions pertained
to attorney fees. The jury answered those questions in defendants' favor as well.

money earned and what really happened with this project and what Mr. Rowlett really had a piece of," and defendants told the jury that "the date you set for the value is the date that the case settled. December 7, 2007. *** You pick that date, because that's what Mr. Finn's approach to damages was." Plaintiffs argued that those statements were unfair, and, thus, the error prejudiced them by creating an erroneous impression in the mind of the jurors that affected the outcome of the case.

Defendants responded that the parties and the trial court decided to place the dates on the verdict form only to determine a date from which to compute pre-judgment interest should damages be awarded. They contended that they had not argued to the jury that it should fix damages on the date of settlement or that the settlement amount fixed the value of Rowlett's interest in Sunrise, but rather that the settlement amount was reasonable in light of all the evidence adduced at trial regarding plaintiffs' damages. And, in any case, defendants argued, plaintiffs had not explained how the mere presence on the verdict form of the settlement valuation date could have harmed them, given that the jurors had been instructed to answer the questions in order, and, therefore, they had never reached the question of valuation dates.

The Court of Appeals, as discussed, agreed with plaintiffs that the presence of the settlement date in Question 10 was erroneous and that it prejudiced them. The Court of Appeals held that the trial court erred in including the settlement date on the verdict form, because, according to the court, there had been no expert testimony at trial stating that the settlement date was a permissible date for valuing Rowlett's interest in Sunrise, and case law supported plaintiffs' expert's testimony that the proper dates for valuing an LLC member's interest in a case like this one was the date when the improper conduct culminated. Thus, according to the Court of Appeals, "the trial court erroneously permitted the jury to consider a valuation date that had no basis in the expert testimony or, it appears, in Oregon law." *Rowlett*, 262 Or App at 691.

The court also held that plaintiffs were harmed by the error. The court stated that, even though defendants

had not argued that the settlement amount fixed the value of Rowlett's interest in Sunrise,

> "defendants cannot overcome the effect of arguments that they did make to the jury that are salient to prejudicial error in this case. Defendants argued to the jury that it should use the settlement date as the date to 'value' Rowlett's interest in Sunrise as it was considering whether plaintiffs were damaged. Defense counsel told the jury, 'the date that you set for a value is the date the case settled. December 7th, 2007.' Defendants further argued to the jury that Finn's settlement assessment was reasonable, and that the jury should answer "no" to the question of negligence being 'a cause of damage to plaintiffs[.]' Again, Finn testified that he had concluded that the settlement amount approximated the value of Rowlett's interest in Sunrise at the time of the settlement in December 2007. Defendants, therefore, urged the jury's reliance on the incorrect valuation date allowed by the court, at a time when Sunrise's value was very low due to the significant drop in the residential real estate market in late 2007, and argued that plaintiffs suffered no damages.

> "* * * * *

> "[T]he prejudicial effect of error on a verdict form, like instructional error, is assessed by whether it probably created an 'erroneous impression of the law in the minds of the jurors' that 'affected the outcome of the case.' *Nolan* [*v. Mt. Bachelor*], 317 Or [328,] 337[, 856 P2d 305 (1993)] (internal quotation marks omitted). We agree with plaintiffs that the addition of the settlement date as one of the proper valuation dates was error that probably affected the outcome of the case, particularly with regard to whether plaintiffs suffered any damages at all. That is because defendants were able to and did argue, in line with the verdict form, that the jury should use the December 7, 2007, settlement date to value Rowlett's interest in Sunrise, that Finn's settlement assessment—which Finn testified approximated the value of Rowlett's interest in Sunrise at that time—was reasonable, and that the jury should answer 'no' in response to the question on the verdict form asking whether defendants' negligence was 'a cause of damage to plaintiffs [.]' Causation was not truly in dispute. As a result, we conclude that plaintiffs are entitled to a new trial on the negligence claim."

262 Or App at 692-94.

In this court, defendants assert that the Court of Appeals, in its analysis of the verdict form issue, failed to consider evidence that defendants had presented to the jury as to the value of Rowlett's interest not only in 2007, but also in 2003 and 2005. That evidence, defendants contend, was relevant to an essential issue in the case—causation. Defendants point out that, in closing, defense counsel did not argue that the jury was required to use the settlement date to value plaintiffs' interest, but, rather, counsel went through each of the alternative valuation dates and explained that Rowlett's interest in Sunrise on those dates was less than or equivalent to the settlement amount. That causation argument, they contend, was entirely proper.

In sum, defendants argue, had the Court of Appeals used the correct standard and viewed the evidence concerning valuation of Rowlett's interest in 2003, 2005, and 2007 in the light most favorable to defendants, the court would have had to agree with the trial court that evidence before that court permitted consideration of the 2007 date on the verdict form, and it would have had to find that the jury's "no causation" defense verdict had evidentiary support regardless of the valuation date used.

As the Court of Appeals noted, a verdict form "'is similar to an instruction in the sense that the court submits it to the jury and requires the jury to follow it.'" *Rowlett*, 262 Or App at 690 (quoting *Nolan*, 317 Or at 336). However, as with a jury instruction, error is reversible only if the erroneous verdict form substantially affected the party's rights under ORS 19.415(2).[13] *Montara Owners Assn. v. La Noue Development, LLC*, 357 Or 333, 350, 353 P3d 563 (2015). That standard requires the party seeking reversal to show that the error "skewed the odds against a legally correct result." *Purdy v. Deere and Company*, 355 Or 204, 226, 324 P3d 455 (2014). That is, the party must show that there is a significant likelihood that the error affected the result. *Id*. In this case, we need not decide whether the Court of Appeals

_____

[13] ORS 19.415(2) provides that "[n]o judgment shall be reversed or modified except for error substantially affecting the rights of a party."

was correct to hold that the trial court erred in permitting the settlement date to appear on the verdict form, because we are not persuaded that there is a significant likelihood that any error affected the result.

To determine whether an erroneous instruction substantially affected the rights of a party (in other words, whether the error was harmless), the court considers the instructions as a whole in light of the evidence and the parties' theories of the case at trial. *Purdy*, 355 Or at 231-32. As we have already discussed, plaintiffs' theory was that they were damaged because the settlement amount in 2007 was less than the value of Rowlett's interest in Sunrise on the dates when the Sunrise defendants manifested their intent to deprive him of his interest in Sunrise—March 13, 2003, and October 7, 2005. Plaintiffs asked the jury to calculate the value of Rowlett's interest in Sunrise as of those dates and to compare those values to the settlement he received in 2007. The trial court's instructions to the jury, which the trial court judge provided to the jury before reading the verdict form, were consistent with that theory. As set out above, the trial court instructed the jury how to determine damages for negligence (and causation) as follows:

> "To determine whether the defendants' alleged *** negligence in fact resulted in a less favorable outcome for the plaintiffs, you must first determine what the outcome for the plaintiffs would have been had the defendants not been negligent. If the outcome that would have occurred is no more favorable than the outcome that did occur, then the plaintiffs' loss or damage cannot have been caused by the defendants."

The instructions did not require the jury to determine a "valuation date" for Rowlett's interest, nor did they suggest or imply that the jury could value Rowlett's interest in Sunrise for purposes of their damage determination as of the date of settlement.[14] Rather, the instructions made clear to the jury that its determination of whether defendants' negligence injured plaintiffs depended entirely on a determination of

---

[14] In fact, the trial court also did not instruct the jury how to decide whether to use the 2003 or 2005 date for determining causation or damages.

what the outcome of the Sunrise litigation would have been had defendants not been negligent—that is, if defendants' representation of plaintiffs had not fallen below the standard of care. And, while the trial court did not specifically instruct the jury that the outcome of the Sunrise litigation, in turn, hinged on the value of Rowlett's interest in Sunrise in 2003 and 2005, or direct the jury to calculate plaintiffs' damages by comparing the settlement amount with the value of Rowlett's interest in Sunrise in 2003 and 2005, that formulation was implicit in the following instruction, which was the only instruction that the trial court provided to the jury that mentioned the operative dates:

> "The maximum amount the plaintiffs have claimed in all of their claims—so this covers all the different claims—are as follows:
>
> "*First, the difference between the settlement amount in the 2007 case and the value of Mr. Rowlett's equity interest in Sunrise Partners, LLC, as of March 13th, 2003, or alternatively, October 7th, 2005.*
>
> "The maximum amount for that item is $2,200,000."

(Emphasis added). Thus, the instructions, taken as a whole, instructed the jury that, if the value of Rowlett's interest in Sunrise on either March 13, 2003, or October 7, 2005, exceeded the settlement amount in 2007, then defendants' negligence caused plaintiffs damage. If not, then defendants' negligence did not cause plaintiffs damage.

After the court so instructed the jury, it read the jury the verdict form. As we will explain, we conclude that the inclusion of the settlement date in Question 10(C) of the verdict form did not undermine the instructions so as to create a significant likelihood that the jury would improperly understand that the settlement amount reflected the actual value of plaintiffs' claims against the Sunrise defendants.

First, the jury had been instructed that the fact that a client settles its lawsuit is not conclusive evidence that the amount of the settlement necessarily reflects the actual value of the client's claims, and the jury is presumed to follow the court's instructions. *Wallach v. Allstate Ins. Co.*, 344 Or 314, 326, 180 P3d 19 (2008).

Second, as discussed, the jury answered Questions 2, 4, and 6 on the verdict form in the negative, finding that defendants' negligence was not "a cause of damage" to plaintiffs. The only instructions that the jury had received about how to make that causation determination were the instructions set forth above, which directed the jury to decide the value of Rowlett's equity interest in Sunrise in 2003 and 2005 and compare those amounts to the settlement amount in 2007. Plaintiff has not challenged those instructions and the jury is presumed to have followed them. The disputed question on the jury form—Question 10(C)—asked the jury, in the event that it found that defendants' negligence was a cause of damage to plaintiffs and then determined an amount of damage, to choose among three dates as the "valuation date of Gerald Rowlett's equity interest in Sunrise Partners." We do not know that the jury even considered that question, given that it found that defendants' negligence was not a cause of damage to plaintiffs, but, even assuming that it did, that does not suggest that the jury was permitted to ignore the court's earlier, more specific, instructions and conclude, contrary to those instructions, that the value of plaintiffs' interest in Sunrise in December 2007 should be used to determine whether defendants' negligence was a cause of damage to plaintiffs.

The Court of Appeals concluded that defendants' closing argument to the jury improperly invoked the erroneous date on the verdict form to argue that the jury should use the settlement date as the date to "value" Rowlett's interest in Sunrise and thus conclude that plaintiffs suffered no damages. In so ruling, the court may have misunderstood defendants' theory of defense and their causation argument. Defendants' theory, which they argued to the jury, was that their negligence was not "a cause of damage" to plaintiffs, because the settlement in 2007, for a sum that was equal to the value of Rowlett's interest at that time, was reasonable insofar as it was the same as or greater than the value of Rowlett's equity interest in Sunrise in 2003 and 2005. Therefore, defendants reasoned and argued, "the jury should answer 'no' in response to the question on the verdict form asking whether defendants' negligence was 'a cause of damage to plaintiffs.'" Defendants' defense turned

primarily on causation. The trial court instructed the jury on causation. And there is no question but that causation was in dispute. The Court of Appeals, therefore, was mistaken when it stated that "[c]ausation was not truly in dispute." 262 Or App at 694.

We agree with defendants that the Court of Appeals' view of defendants' closing arguments failed to take defendants' evidence respecting causation into account. As noted, we are required to view the evidence of causation and damages in the light most favorable to defendants, and there was evidence in the record that Rowlett's interest in Sunrise was worth less in March 2003 and October 2005 than it was in late 2007. Thus, the value of Rowlett's interest in 2007 was relevant to defendants' argument that the 2007 settlement amount reflected the best possible outcome for plaintiffs, even if it amounted to what the Court of Appeals characterized as a "very low" value "due to the significant drop in the real estate market in late 2007." 262 Or App at 694.

As we stated above, instructions, including verdict forms, are considered as a whole in light of the evidence and the parties' theories of the case at trial when determining whether an erroneous instruction substantially affected the rights of a party. *Purdy*, 355 Or at 231-32. In this case, we conclude, based on our review of the instructions as a whole—the jury instructions and the verdict form—and the evidence and the parties' theories of the case, that, even if the trial court erred in including the settlement date among other dates in a question on the verdict form concerning the valuation of Rowlett's interest in Sunrise, there was not a significant likelihood that the error affected the result.

The decision of the Court of Appeals is reversed in part and affirmed in part. The case is remanded to the Court of Appeals to address plaintiffs' remaining assignments of error.