Gerald L. ROWLETT,
an individual;
Westlake Development Company, Inc.,
an Oregon corporation; and
Westlake Development Group, LLC,
an Oregon limited liability company,
*Plaintiffs-Appellants,*

*v.*

David G. FAGAN,
an Oregon resident;
James M. Finn, an Oregon resident; and
Schwabe Williamson & Wyatt, PC,
an Oregon professional corporation,
*Defendants-Respondents.*

Multnomah County Circuit Court
090101006; A146351

388 P3d 407

David W. Melville, The Law Offices of David Melville and Katherine R. Heekin and The Heekin Law Firm, filed the brief for appellants.

Graham M. Sweitzer, Stephen C. Voorhees, and Kilmer, Voorhees & Laurick, P.C., filed the brief for respondents.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

## ARMSTRONG, P. J.

This legal malpractice case is before us on remand from the Supreme Court, which reversed in part and affirmed in part our decision in *Rowlett v. Fagan*, 262 Or App 667, 327 P3d 1 (2014) (*Rowlett I*), rev'd in part, aff'd in part, 358 Or 639, 369 P3d 1132 (2016) (*Rowlett II*). Rowlett and his two companies, Westlake Development Company, Inc., and Westlake Development Group, LLC, (collectively plaintiffs) brought a malpractice action against Schwabe Williamson & Wyatt, PC (Schwabe), and two attorneys, Fagan and Finn, (collectively defendants) alleging claims of negligence, negligent misrepresentation, and breach of fiduciary duty, and entitlement to attorney fees. The malpractice action stemmed from defendants' representation of plaintiffs in an action by plaintiffs against plaintiffs' business partners related to their jointly owned limited liability company, Sunrise Partners, LLC. After procedural errors by defendants in their representation of plaintiffs, plaintiffs settled the Sunrise case and eventually initiated this malpractice action. Following a jury verdict for defendants, plaintiffs appealed, asserting seven assignments of error, three of which have been resolved.[1] The Supreme Court remanded the case to us to resolve the four remaining assignments of error, all of which bear on the calculation of damages on plaintiffs' negligence claim. *See Rowlett II*, 358 Or at 641 n 1.

Defendants contend, and plaintiffs concede, that plaintiffs' second assignment of error—*viz.*, that the trial court erred by denying plaintiffs' motion *in limine* to limit the use of evidence of the Sunrise settlement—was not preserved. We agree and, accordingly, reject that assignment

---

[1] In *Rowlett I*, we affirmed the trial court on plaintiffs' sixth assignment of error, in which plaintiffs contended that the trial court had erred in granting defendants' motion to strike plaintiffs' allegation that they were entitled to recover, as damages, the attorney fees and costs that they had paid to Schwabe. 262 Or App at 698. Plaintiffs did not seek review of that ruling in the Supreme Court; accordingly, that ruling stands. Plaintiffs' first assignment was to the trial court's grant of defendants' motion to strike oppression allegations from plaintiffs' negligence claim. In their third assignment, plaintiffs assigned error to the trial court's inclusion in the verdict form of the date that the parties settled the Sunrise case. As to both of those assignments, the Supreme Court affirmed the trial court. *Rowlett II*, 358 Or at 658, 671.

without written discussion. Next, in their fourth and fifth assignments, plaintiffs assign error to the trial court's admission of testimony by defendants' accounting expert that rebutted testimony by plaintiffs' business-valuation expert. At issue in the trial was the value of Sunrise as of two dates, March 13, 2003, and October 7, 2005. Plaintiffs argue that the accounting expert should not have been permitted to testify under OEC 702 as an expert, and, because she was not a business-valuation expert, she should not have been allowed to testify about the value of Sunrise.[2] Defendants respond that their expert, a forensic accountant, testified within her area of expertise and, accordingly, that the trial court did not err in overruling plaintiffs' objections to her testimony. As explained below, we agree with defendants that the trial court properly admitted the expert testimony.

Finally, in their seventh assignment of error, plaintiffs contend that the trial court erred in granting summary judgment to defendants on plaintiffs' claim for attorney fees. Plaintiffs argue that the attorney-fee clause in the Sunrise operating agreement entitled them to recover the attorney fees that they incurred in litigating their malpractice action. Defendants respond that the attorney-fee clause did not entitle plaintiffs to recover those fees, and, accordingly, that the trial court did not err. Again, as explained below, we agree with defendants. Thus, with regard to plaintiffs' four remaining assignments of error on remand, we affirm the trial court.

The facts of this case are long and complex. We summarize from the Supreme Court opinion in *Rowlett II* the facts necessary to resolve the legal issues on remand.

Rowlett is a real estate developer who had an option in 2000 to purchase two properties. In order to purchase and develop the properties, Rowlett formed Sunrise with two other people. Rowlett assigned to Sunrise his purchase options for the two properties, but Sunrise struggled to find investors and soon lost the option to purchase one of the

---

[2] OEC 702 provides, "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

properties. Sunrise also defaulted on the purchase agreement for the second property, Sunnyside Road. In June 2002, Rowlett hired the Schwabe firm for legal advice because he was concerned about the actions of the other Sunrise members and because the defaulted purchase agreement had caused Rowlett to lose $90,000. In November 2002, Fagan, an associate attorney with Schwabe, filed a complaint in Multnomah County Circuit Court on plaintiffs' behalf against Sunrise and its members other than Rowlett. However, Fagan failed to follow a clause in the Sunrise operating agreement that required arbitration of disputes. Accordingly, in January 2003, plaintiffs stipulated to dismissal of the complaint pending arbitration. However, Fagan did not file an arbitration demand until December 2003 and took no further action before he left Schwabe in May 2005. After Fagan left the firm, another Schwabe attorney, Finn, took over the case. In October 2005, Finn sent a letter to opposing counsel regarding discovery. Opposing counsel responded by objecting to further arbitration and by moving to reinstate the 2002 case and dismiss it with prejudice for lack of prosecution. The circuit court granted that motion in September 2006 and dismissed the 2002 complaint with prejudice.

While those events were transpiring, the other Sunrise members removed Rowlett as a Sunrise manager in March 2003. Then, in October 2005, the other members distributed $5.8 million of Sunrise funds to themselves, with Rowlett receiving nothing, and acted to remove Rowlett as a Sunrise member. In March 2007, Finn filed a new complaint in Multnomah County Circuit Court against Sunrise and the other members. But, by that time, the real estate market had fallen. Sunrise and the other members offered to settle the 2007 case for $200,000 and payment of plaintiffs' reasonable attorney fees, as determined by the circuit court. Plaintiffs accepted the offer, and the court awarded plaintiffs a portion of the attorney fees that they had incurred in the 2007 litigation, roughly $60,000.

In 2009, plaintiffs filed this malpractice action, alleging that defendants' negligent representation of plaintiffs had caused plaintiffs to settle the Sunrise case for significantly less than they would have received had defendants

handled the case properly. Plaintiffs alleged that their damages were the difference between the 2007 settlement amount and "the value of Plaintiff Rowlett's equity interest in Sunrise Partners LLC as of either March 13, 2003 or October 7, 2005, which is $2,200,000." Before trial, defendants moved for summary judgment and to dismiss some of plaintiffs' claims. As relevant here, defendants moved for summary judgment on plaintiffs' claim for attorney fees. Plaintiffs contended in response that the attorney-fee clause in the Sunrise operating agreement entitled them to recover the attorney fees that they incurred in prosecuting the malpractice action. The trial court disagreed with plaintiffs and granted summary judgment to defendants on plaintiffs' claim for those fees.

At trial, both parties presented evidence and testimony about the value of Rowlett's interest in Sunrise on March 13, 2003, when Rowlett was removed as a Sunrise manager, and on October 7, 2005, when the other Sunrise members disbursed $5.8 million from Sunrise to themselves and allegedly removed Rowlett as a Sunrise member. Plaintiffs presented evidence that, on March 13, 2003, Rowlett's interest in Sunrise was worth over $1 million, and on October 7, 2005, his interest was worth over $2.2 million. Defendants responded with evidence that valued Rowlett's Sunrise interest at a much lower value, around $30,000 in March 2003 and either $108,000 or $355,000 in October 2005, depending on which Sunrise operating agreement controlled. Ultimately, the jury found that defendants were negligent in their representation of plaintiffs, but that that negligence had not caused plaintiffs damage.

With that factual background in mind, we return to the issues on remand. As noted, plaintiffs contend in their fourth and fifth assignments of error that the trial court erred in overruling their objections to testimony by defendants' forensic accountant about calculations that she had made regarding plaintiffs' damages. According to plaintiffs, the trial court erred by permitting defendants' accountant to testify as an expert and by allowing her to base her testimony on an unsubstantiated valuation methodology. Defendants respond that their forensic accountant was qualified to testify as an expert, and her testimony was

appropriately admitted because she had used the methodology employed by plaintiffs' expert to value Sunrise and had merely made arithmetic and accounting calculations. We agree with defendants.

We review for legal error whether an expert is qualified to testify about a particular subject. *See, e.g., State v. Rogers*, 330 Or 282, 315, 4 P3d 1261 (2000). As part of their evidence on damages, plaintiffs presented testimony by a business-valuation expert, Dr. Shannon Pratt. The basic point of Pratt's testimony was to establish the value of Rowlett's interest in Sunrise on March 13, 2003, and October 7, 2005. Pratt explained that there are three approaches used by business-valuation experts to value businesses—the market approach, the income approach, and the asset approach—and that he had used the asset approach to value Sunrise.

Under the asset approach, Pratt identified the real property on Sunnyside Road as the asset that he had used to value Sunrise on the specified dates. Pratt is not a real estate appraiser, so he relied on appraisals prepared by real estate appraisers to establish the market value of the property, except for the value of a portion of the property that had been sold just before one of the valuation dates.

For the March 13, 2003, valuation date, Pratt relied on an appraisal that determined the market value of the property to be $11,180,000. Pratt deducted from that value various costs associated with the acquisition and development of the property, totaling $6,215,763, to establish a net value of the real property of $4,964,237. He then used the Sunrise operating agreement to allocate to Rowlett his share of that value based on the Class A and Class B interests that Rowlett held in Sunrise, which valued Rowlett's interest in Sunrise at $1,042,821.

The October 7, 2005, valuation involved three phases of the development of the Sunnyside Road property. The market value of the first phase was based on the amount realized by Sunrise from the sale of the land in that phase. The market value of the land in the second and third phases was based on real property appraisals prepared by

appraisal experts. Pratt deducted from those values the costs to Sunrise associated with acquiring, developing, and marketing the property to reach a net value of $11,994,144 for the property. Relying again on the Sunrise operating agreement to allocate to Rowlett his share of that value, Pratt valued Rowlett's interest in Sunrise on October 7, 2005, at $2,210,289.

In summary, in valuing Rowlett's interest in Sunrise on the specified dates, Pratt selected (1) the valuation approach to use to do that, *viz.*, the asset approach; (2) the assets to use to determine value, *viz.*, the Sunnyside Road property; (3) the manner by which to value the Sunnyside Road property, *viz.*, determine the market value of the property through a sale or an appraisal by an expert real estate appraiser and then deduct the cost to Sunrise to acquire, develop, and sell the property; and (4) the basis on which to allocate to Rowlett his share of Sunrise's value, *viz.*, use the distribution formula in the Sunrise operating agreement.

Defendants responded to Pratt's valuation testimony by, among other things, presenting evidence from a forensic accountant, Katharyn Thompson. Thompson testified and prepared exhibits that were admitted at trial that took issue with aspects of Pratt's testimony. One of the exhibits, Exhibit 610, followed the format of an exhibit that Pratt had prepared and the court had admitted that valued Rowlett's interest in Sunrise on March 13, 2003, at $1,042,821.

There were two substantive differences between the Thompson and Pratt exhibits. Thompson listed a market value for the Sunnyside Road property of $6,652,987—based on an appraisal prepared by an expert real estate appraiser, Donald Singer, who testified for defendants at trial—which was roughly $5.5 million less than the market value that Pratt had listed, which was based on an appraisal prepared by a different real estate appraiser. Thompson also included a deduction for a 10 percent interest payment to holders of Class B interests in Sunrise for funds that they had advanced to Sunrise, based on Thompson's understanding of the terms of the Sunrise operating agreement. The result

was that Thompson valued Rowlett's interest in Sunrise on March 13, 2003, at $30,169.

Thompson's exhibits and related testimony addressed a number of adjustments that Thompson also made to the figures that Pratt had used to value Rowlett's interest in Sunrise as of October 7, 2005. Those adjustments included different market values for the second and third phases of the Sunnyside Road property, based, again, on Singer appraisals; additional costs that Thompson attributed to the cost to acquire and develop the property; and differences in the allocation to Rowlett of his interest in the value of Sunrise, based, again, on Thompson's understanding of various aspects of the Sunrise operating agreement. Based on those differences, Thompson valued Rowlett's interest in Sunrise on October 7, 2005, at $355,312 or $108,274, depending on which of two Sunrise operating agreements applied to the distribution. Pratt, in contrast, valued Rowlett's interest on that date at $2,210,289.

Plaintiffs objected under OEC 702 to the admission of Thompson's exhibits that contained modifications of Pratt's calculations of the value of Rowlett's interest in Sunrise, and to Thompson's testimony about her alternative calculations of that value, on the ground that they involved business-valuation evidence that Thompson lacked the expertise to present. The trial court overruled the objection, reasoning that the evidence was accounting evidence that a forensic accountant was qualified to give.

Applying an operating agreement to the allocation and distribution of company assets is work typically done by accountants, with, perhaps, advice from lawyers. It is not work that requires or implicates the expertise of a business-valuation expert.

Thompson might have exceeded her accounting expertise if she had used something other than or in addition to the Sunrise operating agreement to calculate Rowlett's interest in Sunrise, for example, by applying some sort of discount factor to his interest. Similarly, she would have exceeded her expertise and engaged in work requiring business-valuation expertise if she had undertaken to value Sunrise using a market or income approach rather than an asset

approach; by valuing assets other than the Sunnyside Road property; or by determining the market value of the property in a manner that differed from Pratt's. However, she did not do any of those things or otherwise present evidence that was beyond her expertise as an accountant. Hence, the trial court did not err in overruling plaintiffs' objections to Thompson's testimony.

We turn to plaintiffs' seventh assignment of error, in which plaintiffs contend that the trial court erred in granting defendants summary judgment on plaintiffs' claim to recover the attorney fees that they incurred in litigating the malpractice action. In their second amended complaint, plaintiffs alleged that, "but for defendants' negligence [in the Sunrise case], plaintiffs would not have incurred attorney's fees and costs in bringing this malpractice action. Those additional fees and costs were a reasonably foreseeable risk of harm [to plaintiffs] that ultimately occurred." In other words, plaintiffs alleged that they were entitled to recover the attorney fees and costs that they incurred in the malpractice action, *not* the attorney fees and costs that they *would have recovered* in the Sunrise case—under a clause of the Sunrise operating agreement that entitled the prevailing party to recover attorney fees in that case—had defendants competently litigated the Sunrise case.[3]

Defendants moved for summary judgment on plaintiffs' claim for attorney fees, arguing that the Sunrise attorney-fee clause did not entitle plaintiffs to recover the attorney fees that plaintiffs incurred in prosecuting their malpractice action and, without some other statutory or contractual basis, plaintiffs' attorney fees were not recoverable in the action. Plaintiffs disagreed, arguing that,

> "[a]s a result of defendants' negligence, [plaintiffs have] been forced to spend money hiring an attorney to recover

---

[3] The attorney-fee clause in the Sunrise agreement provides:

"Attorney fees. In the event litigation or arbitration is instituted to enforce or determine the parties' rights or duties arising out of the terms of this Agreement, the prevailing party shall recover from the losing party reasonable attorney fees incurred in such proceeding to the extent permitted by the judge or arbitrator, in arbitration, at trial, on appeal or in any bankruptcy proceedings."

(Underscoring in original.)

the judgment [they] should have had in the first place *if* [defendants] had handled the case competently. \* \* \* Why should [plaintiffs] have to expend attorney fees to recover a judgment that [they] should have never had to expend attorney fees for in the first place?"

Defendants conceded in response—and concede on appeal—that plaintiffs *could* recover as damages in the malpractice action the attorney fees that, but for defendants' negligence, they would have recovered from the defendants in the Sunrise case. However, plaintiffs did *not* allege nor seek *those* attorney fees. The trial court agreed with defendants and ruled that they were not liable for the attorney fees that plaintiffs sought, *viz.*, the attorney fees incurred by plaintiffs in the malpractice action.

Plaintiffs assign error to the trial court's grant of summary judgment to defendants on the attorney fees that plaintiff sought. We will affirm a grant of summary judgment "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 638, 20 P3d 180 (2001) (citing ORCP 47). The question here is purely legal—*viz.*, in a legal malpractice case, does an agreement that provides for an attorney-fee award to the prevailing party in an underlying case make malpractice defendants liable for the attorney fees incurred by the plaintiffs in prosecuting the malpractice action?

Plaintiffs assert that defendants are liable for those fees and point to two cases as support for their position: *Glamann v. St. Paul Fire & Marine Ins. Co.*, 144 Wis 2d 865, 424 NW2d 924 (1988), and *Rivera-Martinez v. Vu*, 245 Or App 422, 263 P3d 1078, *rev den*, 351 Or 318 (2011). However, those cases do not help plaintiffs. Both cases address how to prove or measure the attorney fees that defendants concede are recoverable as damages in a legal malpractice action such as this one but that plaintiffs did *not* seek, *viz.*, the attorney fees that plaintiffs would have recovered from the Sunrise defendants if the Sunrise case had been properly litigated.

As did the trial court, we conclude that plaintiffs' entitlement to attorney fees under the Sunrise agreement

did not entitle plaintiffs to recover the attorney fees that they incurred in prosecuting the malpractice action. Hence, the trial court did not err in granting summary judgment to defendants on plaintiffs' claim for those fees.

In sum, the trial court did not err by denying plaintiffs' motion *in limine* to limit the use of evidence of the Sunrise settlement, by allowing defendants' expert to testify, or by granting summary judgment to defendants on the attorney fees that plaintiffs sought in this case. Accordingly, as to plaintiffs' four assignments of error remaining on remand, we affirm the trial court.

Affirmed.